Michael B. Schulman & Associates
Michael B. Schulman (MS 3690)
145 Pinelawn Road, Suite 310N
Melville, New York   11747
Telephone: 631-622-2080
mschulman@mbslegal.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

STEVEN KRASNER, ALISON KRASNER,
MICHELE TELLONE a/k/a MIKE TELLONE,
TAMIE TELLONE, DAVID FIEDERLEIN,
Individually and as Trustee for the FIEDERLEIN
FAMILY LTD PARTNERSHIP, and BARBARA
FIEDERLEIN,

                           Plaintiffs,

               -against-

RAHFCO FUNDS LP, RAHFCO SELECT LP,
RAHFCO MANAGEMENT GROUP, LLC,
RAHFCO INVESTMENT FUNDS LP,
GIBRALTAR PARTNERS d/b/a GIBRALTAR
PARTNERS INC., GIBRALTAR FUNDS d/b/a
GIBRALTAR FUNDS INC., ANTHONY JOHNSON,
ROBERT JOHNSON, CHRISTINE JOHNSON,
Individually and d/b/a ARC VENTURES, ALLISON
JOHNSON, ROBERT JOHNSON, SR., ANNETTE
JOHNSON, RANDAL K. HANSEN a/k/a RANDY K.
HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN
NUGENT, WARD ONSA, HUDSON PARTNERS NYC
LLC, SPICER JEFFRIES LLP, SFG ACCOUNTING
PLLC, MAN FINANCIAL INC., PERMAPAVE USA
CORP., VERIGREEN, STELLAR CORPORATION
SERVICES LLC, CAPSTONE INVESTMENT FUNDS LLP,
MEIDINGER & ASSOCIATES CPA'S PROF LLC,
SUSAN MEIDINGER, CPA, ENTRUST GROUP d/b/a
ENTRUST RETIREMENT SERVICES, TARA
HANSEN-LEINEN, SHIRLEY HANSEN, RAHFCO
GROWTH FUND LP, and "JOHN DOE" numbers 1-10,

                        Defendants.

------------------------------------------------------------x

**Civil Action No.:**
11 CV 4092 (VB)

**AMENDED COMPLAINT**

**DEMAND FOR**
**JURY TRIAL**

- 1 -

STEVEN KRASNER, ALLISON KRASNER, MICHELE TELLONE a/k/a MIKE TELLONE, TAMMY TELLONE, DAVID FIEDERLEIN, individually and as Trustee for the FIEDERLEIN FAMILY LTD PARTNERSHIP, and BARBARA FIEDERLEIN (hereinafter "investors" or "plaintiffs"), by and through their counsel, Michael B. Schulman & Associates, P.C., for their Amended Complaint against RAHFCO FUNDS LP, RAHFCO SELECT LP, RAHFCO MANAGEMENT GROUP LLC, RAHFCO INVESTMENT FUNDS LP, ANTHONY JOHNSON, ROBERT JOHNSON, et al based on actual knowledge and information and belief, states the following:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction pursuant to Exchange Act §20(b), 10b, Rule 10b-5, 15 U.S.C. §§78j(b), 78o(b)(6)(B)(i), and 78t(a).

2.      In connection with acts described in this Complaint, defendants have used the mails, other instruments of communication, interstate commerce and means or instrumentalities of interstate commerce.

3.      Venue in this District is proper under 28 U.S.C. §1391(b).

## DEFENDANTS

4.      Defendant RAHFCO FUNDS LP (hereinafter "PONZI SCHEME defendants" and "RAHFCO defendants") was part of the alleged main investment vehicle, which collected money from investors in the underlying Ponzi scheme.  It has yet to be determined whether RAHFCO FUNDS LP actually made any legitimate investments, or was simply a shell fund used to defraud investors in the overall Ponzi

scheme.  Defendant RAHFCO FUNDS LP is a Delaware Limited Partnership with its

principal place of business at 3229 Nic Ann Court, Sioux Falls, South Dakota, 57103.

     5.     Defendant RAHFCO INVESTMENT FUNDS LP (hereinafter "PONZI

SCHEME defendants" and "RAHFCO defendants") was part of the alleged main

investment vehicle, which collected money from investors in the underlying Ponzi

scheme.  It has yet to be determined whether RAHFCO INVESTMENT FUNDS LP

actually made any legitimate investments, or was simply a shell fund used to defraud

investors in the overall Ponzi scheme.  Defendant RAHFCO INVESTMENT FUNDS

LP'S principal place of business is 3229 Nic Ann Court, Sioux Falls, South Dakota,

57103.

     6.     Defendant RAHFCO MANAGEMENT GROUP LLC (hereinafter "PONZI

SCHEME defendants" and "RAHFCO defendants") was part of the alleged main

investment vehicle, as General Partner, which collected money from investors in the

underlying Ponzi scheme.  It has yet to be determined whether RAHFCO

MANAGEMENT GROUP LLC actually made any legitimate investments, or was simply

a shell fund used to defraud investors in the overall Ponzi scheme.  Defendant

RAHFCO MANAGEMENT GROUP LLC'S principal place of business is 16423 400th

Avenue, Turton, South Dakota, 57477.

     7.     Defendant RAHFCO SELECT LP (hereinafter "PONZI SCHEME

defendants" and "RAHFCO defendants") was part of the alleged main investment

vehicle, which collected money from investors in the underlying Ponzi scheme.  It has

yet to be determined whether RAHFCO SELECT LP actually made any legitimate

investments, or was simply a shell fund used to defraud investors in the overall Ponzi

scheme. Defendant RAHFCO SELECT LP'S principal place of business is 3229 Nic

Ann Court, Sioux Falls, South Dakota, 57103.

      8.     Defendant RAHFCO GROWTH FUND LP (hereinafter "PONZI SCHEME

defendants" and "RAHFCO defendants") was part of the alleged main investment

vehicle, which collected money from investors in the underlying Ponzi scheme. It has

yet to be determined whether RAHFCO GROWTH FUND LP actually made any

legitimate investments, or was simply a shell fund used to defraud investors in the

overall Ponzi scheme. Defendant RAHFCO GROWTH FUND LP'S principal place of

business is 3229 Nic Ann Court, Sioux Falls, South Dakota, 57103.

      9.     Defendant GIBRALTAR PARTNERS d/b/a GIBRALTAR PARTNERS INC.

(hereinafter "PONZI SCHEME defendants") was an investment vehicle used to solicit

investments from existing and potential investors in the overall Ponzi scheme. The

majority of solicited checks from investors were made out to GIBRALTAR PARTNERS.

It is undetermined whether or not GIBRALTAR PARTNERS actually made any

investments or legitimate trades, or was simply a shell fund used to defraud investors.

Defendant GIBRALTAR PARTNERS' principal place of business is 1 Astor Place, New

York, New York, 10003.

      10.    Defendant GIBRALTAR FUNDS d/b/a GIBRALTAR FUNDS INC.

(hereinafter "PONZI SCHEME defendants") was an investment vehicle used to solicit

investments from existing and potential investors in the overall Ponzi scheme. It is

undetermined whether or not GIBRALTAR FUNDS INC. actually made any investments

or legitimate trades, or was simply a shell fund used to defraud investors. Defendant

- 4 -

GIBRALTAR FUNDS' principal place of business is 16423 400th Avenue, Turton, South Dakota, 57477.

11.    Defendant CAPSTONE INVESTMENT FUNDS LLP (hereinafter "PONZI SCHEME defendants") was part of the RAHFCO defendants' Ponzi scheme. CAPSTONE INVESTMENT FUNDS LLP ("CAPSTONE") sent letters to investors, including, but not limited to plaintiff MICHELE TELLONE a/k/a MIKE TELLONE, informing said plaintiff that CAPSTONE'S accountants would be providing investors with quarterly statements of monthly returns.  Letters from CAPSTONE contain contact information and correspondence from defendants ANTHONY JOHNSON and RANDAL K. HANSEN.  Defendant CAPSTONE INVESTMENT FUNDS LLP'S principal place of business is 16423 400th Avenue, Turton, South Dakota, 57477.  Upon information and belief, CAPSTONE INVESTMENT FUNDS was also known as CAPSTONE TRADING GROUP LLP.

12.    Defendant MEIDINGER & ASSOCIATES CPA'S PROF LLC (hereinafter "PONZI SCHEME defendants") is the accounting firm designated to provide accounting services to PONZI SCHEME defendants according to the CAPSTONE quarterly statements from 2006 through the first quarter of 2007, and in letters/notices from defendants ANTHONY JOHNSON and RANDAL K. HANSEN.  Defendant MEIDINGER & ASSOCIATES CPA'S PROF LLC'S principal place of business is 123 3rd Avenue SW, Aberdeen, South Dakota, 57410.

13.    Defendant SUSAN MEIDINGER is associated with defendant MEIDINGER & ASSOCIATES CPA'S PROF LLC, the accounting firm listed on defendant CAPSTONE'S quarterly statements.  In letters from defendants ANTHONY

- 5 -

JOHNSON and RANDAL K. HANSEN, it states that defendant SUSAN MEIDINGER

would be providing defendant GIBRALTAR FUNDS INC. with accounting, financial

statements and tax related work. Defendant SUSAN MEIDINGER'S principal place of

business is 123 3rd Avenue SW, Aberdeen, South Dakota, 57410.

     14.    Defendant ANTHONY JOHNSON is one of the masterminds and ring

leaders behind the Ponzi scheme. Defendant ANTHONY JOHNSON solicited funds

from potential and existing investors and plaintiffs as well as claimed to have a

prominent managerial and trading role in defendants' Ponzi scheme operations.

Defendant ANTHONY JOHNSON resides at 12 Miller Road, Putnam Valley, New York,

10579.

     15.    Defendant ROBERT JOHNSON is defendant ANTHONY JOHNSON'S

brother. Defendant ROBERT JOHNSON was an agent for defendant ANTHONY

JOHNSON and defendants' Ponzi scheme operations. Defendant ROBERT JOHNSON

was active in soliciting investments from potential and existing investors, while

defrauding said investors claiming that most of his money was invested in his brother's,

defendant ANTHONY JOHNSON'S, investment vehicles with PONZI SCHEME

defendants. Defendant ROBERT JOHNSON resides at 12 Miller Road, Putnam Valley,

New York, 10579.

     16.    Defendant CHRISTINE JOHNSON individually and d/b/a ARC

VENTURES, ROBERT JOHNSON'S wife, was active in soliciting and defrauding

potential and existing investors for PONZI SCHEME defendants. Defendant

CHRISTINE JOHNSON resides at 12 Miller Road, Putnam Valley, New York, 10579.

17.     Defendant ALLISON JOHNSON, ANTHONY JOHNSON'S wife, was active in soliciting and defrauding potential and existing investors for PONZI SCHEME defendants.  Defendant ALLISON JOHNSON resides at 12 Miller Road, Putnam Valley, New York, 10579.

18.     Defendants ROBERT JOHNSON, SR. and ANNETTE JOHNSON are the parents of defendant ROBERT JOHNSON and defendant ANTHONY JOHNSON and were active in soliciting and defrauding potential and existing investors, claiming that their finances were invested in the risk free, high return investment services provided by their son, defendant ANTHONY JOHNSON and PONZI SCHEME defendants. Defendants ROBERT JOHNSON, SR. and ANNETTE JOHNSON reside at 2326 Depeyster Drive, Cortlandt Manor, New York, 10567.

19.     Defendant RANDAL K. HANSEN a/k/a RANDY K. HANSEN is listed in the RAHFCO FUNDS LP investment prospectus as the founder, principal member and president of RAHFCO FUNDS LP.  Said investment prospectus claims that defendant HANSEN performed portfolio management services for RAHFCO FUNDS LP when in fact RAHFCO FUNDS LP was a Ponzi scheme and may not have ever made any legitimate investments on behalf of its investors.  Defendant RANDAL K. HANSEN resides at 3229 Nic Ann Court, Sioux Falls, South Dakota, 57103.

20.     Defendant GLENN GRIFFIN was an agent used by defendants, specifically ANTHONY JOHNSON and ROBERT JOHNSON, in soliciting investments from potential and existing investors for PONZI SCHEME defendants.  Defendant GRIFFIN claimed that all of his finances were invested in the risk free high return of the PONZI SCHEME defendants' investment services and failed to inform plaintiffs he was

getting a commission. Defendant GLENN GRIFFIN received funds from plaintiff on behalf of defendants. Defendant GLENN GRIFFIN resides at 1234 Lincoln Terrace, Peekskill, New York, 10566.

21.     Defendant VINCENT PUMA is listed in the RAHFCO FUNDS LP prospectus as the manager and controlling member.  Said prospectus reports that defendant PUMA is RAHFCO FUNDS LP'S primary portfolio manager. As manager and controlling member, defendant PUMA was directly involved in defrauding investors and in manipulating trades and accounts to facilitate the Ponzi scheme.  Defendant VINCENT PUMA is believed to reside in New York, with a principal place of business at 685 Fifth Avenue, 9th Floor, New York, New York, 10022.

22.     Defendant KEVIN NUGENT is listed in the RAHFCO FUNDS LP prospectus as the partnership's trader.  It is unclear whether defendant NUGENT actually participated in any legitimate trades, but certainly was aware and facilitated defrauding RAHFCO'S investors in the overall Ponzi scheme.  Defendant KEVIN NUGENT'S principal place of business is 16423 400th Avenue, Turton, South Dakota, 57477.

23.     Defendant WARD ONSA is listed in the RAHFCO FUNDS LP prospectus as the partnership's trader.  It is unclear whether defendant ONSA actually participated in any legitimate trades, but certainly was aware and facilitated defrauding RAHFCO'S investors in the overall Ponzi scheme.  Defendant WARD ONSA'S principal place of business is 208 East 51st Street, Suite 390, New York, New York, 10022.

24.     Defendant HUDSON PARTNERS NYC LLC is listed in the RAHFCO FUNDS LP prospectus as a subadvisor, which states that the subadvisor will manage

most of the portfolio, execute trades, provide information and advice, carry out research and provide analysis and recommendations to the general partners. Defendant PUMA owns defendant HUDSON PARTNERS NYC LLC which provided fraudulent K-1 statements. Defendant HUDSON PARTNERS NYC LLC'S principal place of business is 208 East 51st Street, Suite 290, New York, New York, 10022.

25.    Defendant SPICER JEFFRIES LLP is listed in the RAHFCO FUNDS LP prospectus as the fund's auditor. Plaintiffs detrimentally relied upon defendant's inclusion in RAHFCO prospectus. Defendant SPICER JEFFRIES LLP'S principal place of business is 5251 South Quebec Street, Suite 200, Greenwood Village, Colorado, 80111.

26.    Defendant SFG ACCOUNTING PLLC is listed in the RAHFCO FUNDS LP prospectus as the fund's accountant and presented inaccurate RAHFCO quarterly statements. Defendant SFG ACCOUNTING PLLC'S principal place of business is 24 Fifth Avenue SW, Aberdeen, South Dakota, 57401. Plaintiffs detrimentally relied upon defendant's inclusion in RAHFCO prospectus and inaccurate quarterly statements.

27.    Defendant MAN FINANCIAL INC. is listed in the RAHFCO FUNDS LP prospectus as the fund's clearing broker. The prospectus states that defendant MAN FINANCIAL acts as the initial custodian for the fund and "will generally clear the securities transactions with the Partnership... The partnership may also utilize the Clearing Broker, its affiliates and other brokers and dealers for the purpose of executing transactions for the Partnership. Accordingly, the Clearing Broker may receive a substantial amount of brokerage commissions and/or margin interest related to the securities transactions of the Partnership." Plaintiff detrimentally relied on these

statements when deciding and continuing to invest. Defendant MAN FINANCIAL INC.'S principal place of business is 717 Fifth Avenue, 9th Floor, New York, New York, 10022.

28.     Defendant ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES was an alleged investment vehicle of the PONZI SCHEME defendants, defendants ANTHONY JOHNSON and RANDY HANSEN, which was part of the overall Ponzi scheme and which may or may not have actually received part of the investors' money. Plaintiffs received monthly statements indicating funds invested with ENTRUST GROUP. Defendant ENTRUST GROUP'S principal place of business is 17171 Park Row, Ste 100, Houston, Texas, 77084.

29.     Defendant PERMAPAVE USA CORP. was an alleged investment of PONZI SCHEME defendants, which was part of the overall Ponzi scheme and which may or may not have actually received part of the investors' money. Defendant PERMAPAVE USA CORP.'S principal place of business is 575 Underhill Boulevard, Ste 125, Syosset, New York, 11791.

30.     Defendant VERIGREEN was an alleged investment of PONZI SCHEME defendants which was part of the overall Ponzi scheme and which may or may not have actually received part of the investors' money. Defendant VERIGREEN'S principal place of business is 575 Underhill Boulevard, Ste 125, Syosset, New York, 11791.

31.     Defendant STELLAR CORPORATION SERVICES LLC was an alleged investment of the PONZI SCHEME defendants which was part of the overall Ponzi scheme and which may or may not have actually received part of the investors' money.

32.     Defendant TARA HANSEN-LEINEN is listed as the Vice President of Operations at RAHFCO, and was active in defrauding investors and managing

RAHFCO, including self-endorsing at least one check to RAHFCO SELECT. TARA HANSEN-LEINEN'S principal place of business is 3229 Nic Ann Court, Sioux Falls, South Dakota, 57103.

33.    Defendant SHIRLEY HANSEN, RANDAL K. HANSEN'S wife, was active in the defrauding of investors and lists her principal place of business at the address of RAHFCO MANAGEMENT GROUP LLC, 16423 400th Avenue, Turton, South Dakota, 57477.

## NATURE OF PROCEEDING

34.    This proceeding is part of plaintiffs' continuing efforts to recapture and return the funds stolen through PONZI SCHEME defendants and all defendants' operations. Through this action, plaintiffs seek a judgment for an amount of $100,000,000.00 (One Hundred Million Dollars) against all defendants collectively and individually, resulting from fraudulent actions, breaches of fiduciary duties, acts inconsistent with their roles as fiduciaries and other tortuous conduct that facilitated the Ponzi scheme, which unjustly enriched all named defendants.

35.    Defendants' management, advertising, accounting and regulatory responsibilities extended through trading operations, customer relationships, marketing, legal and regulatory functions in the Ponzi scheme; yet defendants were negligent in these duties and responsibilities. As a result, defendants helped perpetrate the Ponzi scheme fraud, or conversely failed to detect or failed to stop the fraud, thereby enabling and facilitating the Ponzi scheme. Simply put, if all defendants had been doing their jobs, legitimately and without malicious intent, the Ponzi scheme might never have succeeded or continued for so long.

36.     Defendants', ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, misappropriations of investors' and plaintiffs' funds ranged from sending customers statements informing them that certain securities had been purchased when in fact they had not been, to possibly purchasing securities for the benefit of defendants rather than the intended customer, to any other types of fraud in which Ponzi schemes defraud their customers out of said funds. Defendants mentioned herein have the information exclusively within their control and knowledge.

37.     This action seeks the imposition of a constructive trust, an accounting and to recover money improperly received by any and all defendants due to their breaches of fiduciary duty, conversion, negligence and unjust enrichment stemming from the Ponzi scheme, and other remedies this Court deems just and proper.

## DEFENDANT ANTHONY JOHNSON'S PRIOR FRAUD

38.     Prior to the Ponzi scheme orchestrated by defendant ANTHONY JOHNSON and PONZI SCHEME defendants, defendant ANTHONY JOHNSON had pled guilty to a different, prior securities fraud charge.

39.     Beginning on or about April 2002 and continuing through February 2003, ANTHONY JOHNSON engaged in a fraudulent scheme to profit from the sale of over

3.5 million dollars in securities through manipulation, high pressure sales practices, baseless price projections, unauthorized trades and misrepresentations and omissions of material facts.

40.    Thereupon an indictment was filed against ANTHONY JOHNSON in the United States District Court for the Eastern District of New York.  Docket Number 2:07-cr-00854.

41.    Defendant ANTHONY JOHNSON plead guilty to Count 1 of the indictment, Conspiracy to Commit Securities Fraud, Mail Fraud, Wire Fraud.

42.    As part of the scheme, defendant ANTHONY JOHNSON'S company, CAPITAL GROWTH FINANCIAL LLC'S share price was manipulated by placing small buy orders in the market to bid up its price.

43.    The firm and its parent company CAPITAL GROWTH FINANCIAL LLC profited from the manipulation by selling their company's shares to the firm's customers at artificially inflated prices.  In addition, the firm executed sales of the company's securities for certain favored companies, who, in turn, shared their proceeds with defendant ANTHONY JOHNSON'S firm.

44.    To carry out its scheme to sell the company's shares to its customers, the firm employed two groups of salesman, one of which was headed by defendant ANTHONY JOHNSON.

45.    Defendant ANTHONY JOHNSON used manipulative, high pressure, boiler room techniques to induce customers to purchase the company's securities, to sway customers from selling their shares and to avoid responsibility to customers for misconduct related to the buying and selling of securities.

46.     Defendant ANTHONY JOHNSON'S techniques involved high pressure sales pitches, material misrepresentations and omissions of material facts, in addition to unauthorized transactions in customer accounts. Additionally, defendant ANTHONY JOHNSON provided false and misleading testimony in connection to official government and regulatory regulations regarding his firm.

47.     As a result defendant ANTHONY JOHNSON was barred from any association with any NASD member in any capacity as of October 12, 2006.

48.     Additionally, defendant ANTHONY JOHNSON has also pled guilty in the U.S. District Court for the Eastern District of New York, Docket number 11-cr-287, on similar securities fraud issues.

49.     ANTHONY JOHNSON is currently incarcerated.

### FACTUAL BACKGROUND OF DEFENDANTS RANDY HANSEN, ANTHONY JOHNSON, VINCENT PUMA AND WARD ONSA'S INITIAL FRAUD

50.     The total extent of the fraud committed by defendants RANDY HANSEN, ANTHONY JOHNSON, VINCENT PUMA, WARD ONSA, CAPSTONE INVESTMENT FUNDS and GIBRALTAR FUNDS is exclusively within their knowledge.

51.     Upon information and belief on or about 2004 defendants ANTHONY JOHNSON, VINCENT PUMA, WARD ONSA and RANDY HANSEN began their first Ponzi scheme by forming CAPSTONE INVESTMENT FUND, LLP also known as CAPSTONE TRADING GROUP, LLC.

52.     Upon information and belief, pursuant to private placement memorandum and other documents, same defendants established corporations, limited liability companies, limited liability partnerships, limited partnerships, known as Innovative

Investment Opportunities, Inc., also known as IIE, Inc., IIE, Innovative Investment Enterprises; IIE I, IIE II,; Gibraltar Funds, Gibraltar I, Gibraltar II, Gibraltar Trading Opportunities II, Inc., Gibraltar Trading Opportunities, Inc., also known as GTO I, GTO II.

53.     Upon information and belief, defendants ANTHONY JOHNSON, RANDY HANSEN, WARD ONSA and VICENT PUMA, set up corporations, limited liability companies, limited liability partnerships and limited partnerships with similar names to defraud investors and plaintiffs and evade taxes and government authorities.

54.     That defendants ANTHONY JOHNSON, RANDY HANSEN, WARD ONSA, and VINCENT PUMA established Innovative Investment Opportunities, Inc., also known as IIE, Inc.,; IIE; Innovative Investment Enterprises; IIE I, IIE II, Gibraltar Funds, Gibraltar I, Gibraltar II, Gibraltar Trading Opportunities II, Inc., Gibraltar Trading Opportunities, Inc., also known as GTO I, GTO II, in or about 2004 and used each company and name as one in the same to transfer money and deceive plaintiffs and authorities.

55.     That all the IIE and Gibraltar company addresses are 16423, 400th Avenue, Turton, SD, 57477, a property owned by HANSEN HOLDINGS LP and upon information and belief RANDY HANSEN.

56.     That defendant ANTHONY JOHNSON graduated from Iona College, in New Rochelle, New York, and received his Series 7 license on October 14, 1994, and his Series 63 on October 31, 1994.

57.     Upon information and belief, defendant ANTHONY JOHNSON helped organize IIE and Gibraltar companies, and acted as a trader and principal, as listed in

- 15 -

the Innovative Investment Opportunities, Offering Memorandum as "additional principal"
who will soon be engaged "as of the present date cannot be disclosed to third-parties…"
The "additional principal" graduated "from Iona College, in New Rochelle, New York."
He also became "a Series 7 & 63 licensed representative…"

58.     Upon information and belief in a conversation with a Ponzi scheme victim,
on or about April 23, 2011, defendant RANDY HANSEN stated he did not remember if
his partner/defendant ANTHONY JOHNSON at the time was a part of defendant
GIBRALTAR FUNDS.

59.     That defendants RANDY HANSEN and ANTHONY JOHNSON were
principals of IIE and Gibraltar companies beginning on or about 2004.

60.     Upon information and belief, defendant VINCENT PUMA helped organize
IIE, and acted as a trader, as listed in the Innovative Investment Opportunities, Offering
Memorandum as "Trader II" and began a securities career "after studying at Baruch
College and New York University." He was "broker trainee before joining Josephthal
Securities in 1994, where he became an Account Executive…"

61.     That the RAHFCO prospectus states defendant VINCENT PUMA began
his securities career "after studying at Baruch College and New York University." He
joined "Josephthal Securities in 1994, where he became an Account Executive."

62.     Upon information and belief, defendant WARD ONSA helped organize IIE,
and acted as a trader, as listed in the Innovative Investment Opportunities, Offering
Memorandum as ""Trader I", age 52, graduated from the University of Dayton in 1975
with a Bachelor of Arts degree. He has been a Member of both the New York Futures
Exchange and the Independent Options and Futures Trader Association since 1985."

63.     That the RAHFCO prospectus states defendant WARD ONSA "graduated from the University of Dayton in 1975 with a Bachelor of Arts degree and has been a Member of both the New York Futures Exchange and the Independent Options and Futures Trader Association since 1985."

64.     Upon information and belief, defendants RANDY HANSEN, WARD ONSA, VINCENT PUMA and ANTHONY JOHNSON were partners and or helped form the limited liability company known as CAPSTONE TRADING GROUP.

65.     Upon information and belief, defendants ANTHONY JOHNSON, WARD ONSA,  VINCENT PUMA and RANDY HANSEN represented to individuals in letters and promissory notes that CAPSTONE TRADING GROUP, LLC., GTO II, INC. were both Oklahoma companies.

66.     That upon information and belief, on June 1, 2006, in a letter dated to a victim of defendants' Ponzi scheme, both defendant RANDY HANSEN, as President of INNOVATIVE INVESTMENT ENTERPRISES, INC., also known as "IIE" and defendant ANTHONY JOHNSON, as Secretary, confirmed an investment from a victim of the defendants' Ponzi scheme.

67.     That defendant CAPSTONE INVESTMENT FUNDS, a limited liability partnership also known as CAPSTONE TRADING GROUP, LLC, and associated with the Gibraltar funds listed herein and the IIE funds listed herein, sent letters to plaintiff TELLONE welcoming him to the limited partnership.  Same letter written by defendant RANDY HANSEN states that if there were any questions to contact defendant ANTHONY JOHNSON or defendant RANDY HANSEN.

68.    Upon information and belief, CAPSTONE TRADING GROUP, LLC was
the general partner of Limited Partnerships known as Gibraltar I, Gibraltar II, Innovative
Investment Enterprise I also known as IIE I, and Innovative Enterprise II also known as
IIE II, Innovative Investment Opportunities, also known as IIE, Inc., also known as IIE,
Gibraltar Trading Opportunities II, Inc., also known as GTO II, also known as GTO II,
Inc.

69.    Upon information and belief, the funds previously mentioned were
established and alleged to have been registered in Oklahoma with the Department of
State, with similar or the same names in order to evade taxes, defraud plaintiffs and
misdirect any appearance of any impropriety.

70.    Upon information and belief, on March 5, 2007, in a letter to Limited
Partners signed by defendant RANDY HANSEN as the managing member of the
General Partner CAPSTONE TRADING GROUP, LLC, defendant RANDY HANSEN
stated that the limited partnerships would be dissolved and investors could then reinvest
in defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP.

71.    Upon information and belief, the defendant GIBRALTAR FUNDS known
as IIE, GTO I, and GTO II thereafter listed as defendant GIBRALTAR FUNDS, was not
dissolved.  That Innovative Investment Enterprises, was suspended by the Oklahoma
Tax Commission for failing to pay taxes. That Gibraltar Trading Opportunities, Inc., aka
GTO I, was suspended by the Texas Comptroller of Public Accounts for failing to pay
taxes.

72.    That defendant GIBRALTAR FUNDS and GIBRALTAR PARTNERS
pursuant to investor statements was receiving investments from plaintiffs through 2010.

73.   That defendant ANTHONY JOHNSON was directly soliciting investments for the defendant GIBRALTAR FUNDS and GIBRALTAR PARTNERS.

74.   That defendants RANDY HANSEN, WARD ONSA, and VINCENT PUMA knew or should have known that defendant HANSEN'S principal partner, defendant ANTHONY JOHNSON and defendants PUMA AND ONSA'S associate, defendant ANTHONY JOHNSON was investing plaintiffs funds under defendant GIBRALTAR FUNDS and the specific funds IIE, GTO I, and GTO II after the first quarter of 2007.

75.   That defendant GIBRALTAR FUNDS and GIBRALTAR PARTNERS were sending out investor statements through the year 2010.

76.   That upon information and belief defendant RANDY HANSEN said the funds and limited partnerships would be dissolved in 2007.

77.   Upon information and belief, Gibraltar Trading Opportunities II, Inc was not dissolved but suspended for failing to pay taxes.

78.   That upon information and belief, all RAHFCO defendants were started by defendants ANTHONY JOHNSON, WARD ONSA, RANDY HANSEN and VINCENT PUMA, because defendants Gibraltar Trading Opportunities II, Inc., and Gibraltar Trading Opportunities, Inc., were failing and could not pay it's taxes.

79.   Upon information and belief defendants RANDY HANSEN, WARD ONSA, ANTHONY JOHNSON and VINCENT PUMA, never dissolved the fund, Innovative Investment Enterprises, also know as (IIE, IIE I, IIE II, Innovative Investment Opportunities, Inc.).

80.   Upon information and belief all RAHFCO defendants were started by defendants ANTHONY JOHNSON, WARD ONSA, RANDY HANSEN and VINCENT

PUMA, because Innovative Investment Enterprises, also know as (IIE I, IIE I, IIE II, Innovative Investment Opportunities, Inc.) was failing and could not pay it's taxes.

81.    Upon information and belief, Innovative Investment Enterprises, Inc., is listed as a stock on a Ponzi scheme victim's account statements, from defendant ENTRUST RETIREMENT SERVIECES, having more than $60,000.00 invested.

82.    That plaintiffs received letters from defendant ANTHONY JOHNSON on behalf of defendant GIBRALTAR FUNDS INC. and specifically funds GTO I, GTO II, IIE and CAPSTONE INVESTMENTS at the beginning of 2007 stating defendants SUSAN K. MEIDINGER and MEIDINGER AND ASSOCIATES, CPAs would be the accountant for defendant GIBRALTAR FUNDS, INC. and General Partner/defendant CAPSTONE INVESTMENT FUNDS.

83.    That upon information and belief, defendant CAPSTONE INVESTMENT FUNDS, LLP was a limited liability partnership registered in the State of South Dakota with the address 16423 400th Avenue, Turton, South Dakota 57477, a property owned by HANSEN HOLDINGS LP, and upon information and belief defendant RANDY HANSEN.

84.    That defendant CAPSTONE INVESTMENT FUNDS LLP had its certification revoked by the State of South Dakota on or about November 9, 2007.

85.    That the registered address for defendant CAPSTONE INVESTMENT FUNDS LLP is the same as defendant RAHFCO MANAGEMENT GROUP, LLC.

86.    That plaintiff's received statements from defendant CAPSTONE INVESTMENT FUNDS, with the registered address of defendant RAHFCO FUNDS and

defendant CAPSTONE INVESTMENT FUNDS.  On same investor's statements, funds GTO I, GTO II and CAPSTONE are listed in the letterhead.

87.    Upon information and belief defendants RANDY HANSEN, WARD ONSA, VINCENT PUMA and ANTHONY JOHNSON represented to investors and plaintiffs that CAPSTONE TRADING GROUP LLC, IIE companies/funds and GIBRALTAR companies/funds were legitimate entities registered in Oklahoma and based on these representations defendants RANDY HANSEN, WARD ONSA, VINCENT PUMA and ANTHONY JOHNSON were able to defraud plaintiffs and investors.

88.    Upon information and belief, defendant RANDY HANSEN stated in letters and Offering Memorandum, that IIE and GTO II were limited partnerships that would be dissolved.  On or about April 21, 2011, defendant RANDY HANSEN expressly stated to a victim that he was "unfamiliar with any of GTO II and IIE."

89.    Upon information and belief in that same conversation on April 21, 2011 defendant RANDY HANSEN stated that there was a GIBRALTAR he set up years ago which was a Texas corporation, and failed to mention the other Gibraltar funds, even though defendant RANDY HANSEN had stated in documents, defendant GIBRALTAR and the General Partner CAPSTONE TRADING GROUP LLC, which managed the funds, were listed as Oklahoma corporations.

90.    That upon information and belief, defendants RANDY HANSEN and ANTHONY JOHNSON were partners prior to the organization of defendants RAHFCO.

91.    Upon information and belief defendants RANDY HANSEN, WARD ONSA, VINCENT PUMA and ANTHONY JOHNSON through use of fictitious names similar to

legitimate companies were able to deceive unsophisticated plaintiffs and Ponzi scheme victims.

92.     That defendant ANTHONY JOHNSON continued to attract plaintiffs and potential investors through the use of defendant GIBRALTAR FUNDS, IIE, GTO I and GTO II after defendant RANDY HANSEN informed those plaintiffs and investors that the limited partnerships would be dissolved.

93.     That defendant RANDY HANSEN, WARD ONSA, VINCENT PUMA knew or should have known that defendant ANTHONY JOHNSON continued to seek investors for the fictitious fund known as GIBRALTAR FUNDS, IIE, GTO I and GTO II.

94.     That as a result of defendants RANDY HANSEN, WARD ONSA, VINCENT PUMA and ANTHONY JOHNSON deception and misrepresentations, plaintiffs would not have invested and the same representations were the direct cause of plaintiffs investing with same defendants.

**MISREPRESENTATIONS IN
RAHFCO PROSPECTUS**

95.     The total extent of the fraud committed by defendants is exclusively within their knowledge.

96.     Defendants RAHFCO MANAGEMENT GROUP LLC, RAHFCO FUNDS LP, WARD ONSA, VINCENT PUMA, HUDSON PARTNERS NYC LLC, ANTHONY JOHNSON, RANDY HANSEN, and TARA HANSEN-LEINEN were negligent in misrepresenting to plaintiffs in the RAHFCO FUNDS LP prospectus by not addressing ANTHONY JOHNSON'S role in the company nor mentioning ANTHONY JOHNSON'S prior indictment on November 28, 2007.

- 22 -

97.    Defendants mentioned herein materially misrepresented defendant ANTHONY JOHNSON'S involvement in RAHFCO FUNDS and RAHFCO MANAGEMENT GROUP LLC.

98.    Upon information and belief, based on the Information filed by the United States District Attorneys office, herein mentioned, RAHFCO stands for RANDY AND ANTHONY HEDGE FUND COMPANY.

99.    Upon information and belief, according to same Information, ANTHONY JOHNSON admitted that he was a 50% owner in the RAHFCO HEDGE FUND.

100.    That no where in the RAHFCO FUNDS LP prospectus presented by the general partner, defendant RAHFCO MANAGEMENT GROUP LLC, is defendant ANTHONY JOHNSON mentioned a single time.

101.    Upon information and belief, defendant ANTHONY JOHNSON'S omission from the RAHFCO prospectus was intentional and willful so as to mislead plaintiffs.

102.    That defendant ANTHONY JOHNSON'S omission from the RAHFCO FUNDS LP prospectus is a material misrepresentation as he is a 50% owner in RAHFCO MANAGEMENT GROUP LLC.

103.    Upon information and belief, defendant ANTHONY JOHNSON was omitted from the RAHFCO prospectus intentionally because all the defendants mentioned herein knew or should have known of defendant ANTHONY JOHNSON'S prior frauds.

104.    That defendant ANTHONY JOHNSON'S omission and the omission of his prior indictment directly related to plaintiffs investing in defendant RAHFCO MANAGEMENT GROUP LLC.

105.   That the prospectus was not amended to include ANTHONY JOHNSON'S indictments, suspensions, bars, conflicts of interest and conviction.

106.   That the prospectus required all investors to have a net worth of at least one million dollars.

107.   Investors were required to be accredited investors pursuant to the Securities Act of 1933 as amended.

108.   Upon information and belief, defendant RANDY HANSEN, as principal to general partner, RAHFCO MANAGEMENT GROUP LLC, allowed investors who were not accredited under the Securities Act of 1933 to invest in the fund, namely plaintiffs TELLONE.

109.   That defendant RANDY HANSEN, as principal, and general partner and defendant RAHFCO MANAGEMENT GROUP LLC, represented in the prospectus that the general partner's primary responsibility was for selecting and monitoring partnership investments.

110.   Defendants RANDY HANSEN and RAHFCO MANAGEMENT GROUP LLC materially misrepresented defendant RANDY HANSEN'S responsibility for monitoring investments, as RANDY HANSEN allowed defendant ANTHONY JOHNSON to invest plaintiffs' money on behalf of defendant RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC.

111.   The RAHFCO prospectus misrepresents that its brokerage, clearing firms and general partners intend to supervise and monitor the trading activity in the partnership's accounts to insure compliance.

112.   Upon information and belief, the general partner, brokerage firm and clearing firms did not monitor trading activity in the partnership's account to insure compliance as principal owner and defendant RANDY HANSEN wrote the letter in Spring 2011, to investors stating "It has recently come to my attention, that for some time, the earnings figures in our statements have been inaccurate."

113.   Upon information and belief, general partner and defendant RANDY HANSEN did not monitor and supervise the trading operations of the partnership's accounts as the figures had been inaccurate for "some time".

114.   While the prospectus does say there is risk of inappropriate trading, the general partner, principal owner, brokerage firm and clearing firm knew or should have known such inappropriate trading was occurring for "some time."

115.   In the defendant RAHFCO FUND LP prospectus defendant RANDY HANSEN as principal owner of the general partner is accountable to the partnership as fiduciary and agreed to exercise good faith and integrity in handling the business of the partnership.

116.   Upon information and belief defendant and principal of the general partner RANDY HANSEN misrepresented to plaintiffs, his accountability as a fiduciary and duty to exercise good faith and integrity in handling the partnership business as he allowed plaintiffs to invest with defendant ANTHONY JOHNSON and formed defendant RAHFCO MANAGEMENT GROUP with defendant ANTHONY JOHNSON.

117.   Upon information and belief, principal of the general partner and defendant RANDY HANSEN, intentionally failed to inform plaintiffs of ANTHONY JOHNSON'S prior offenses and securities fraud.

- 25 -

118.   Defendant and principal of the general partner RANDY HANSEN breached his fiduciary duty to plaintiffs by not informing plaintiffs of defendant ANTHONY JOHNSON'S fraud and prior indictment and failing to include defendant ANTHONY JOHNSON in the RAHFCO FUND LP'S prospectus.

119.   That plaintiffs relied on the representations and misrepresentations in the RAHFCO FUNDS LP prospectus which was a direct cause of plaintiffs' investment with defendant ANTHONY JOHNSON, defendant RANDY HANSEN, defendant RAHFCO MANAGEMENT GROUP LLC, and defendant RAHFCO FUNDS LP.

120.   That defendants and the RAHFCO prospectus failed to update plaintiffs and inform them of defendant ONSA'S conflicting interest, thereby misrepresenting to plaintiffs, RAHFCO'S ability to operate unbiased.

121.   That had plaintiffs known multiple traders at all RAHFCO defendants had a conflicting interest, plaintiffs would not have invested with defendants.

122.   That defendant ONSA'S conflicting interest upon information and belief led to and contributed to his fraud.

123.   The total extent of the fraud committed by defendant ANTHONY JOHNSON is exclusively within his knowledge.

124.   That the failure to include defendant ONSA'S conflicting interest in the RAHFCO prospectus was a significant misrepresentation.

## ANTHONY JOHNSON'S FRAUDULENT STATEMENTS MISREPRESENTATIONS AND ACTS

125.   The total extent of the fraud committed by defendant ANTHONY JOHNSON is exclusively within his knowledge.

126.   In the summers of 2004 and 2005 at Hollow Brook Golf Club ANTHONY JOHNSON said his investment services were "very safe and lucrative" and plaintiffs would "make a lot of money."

127.   Defendant ANTHONY JOHNSON, at the time, said everything that he invested was "bonded."

128.   Defendant ANTHONY JOHNSON in the summers of 2004 and 2005 stated that plaintiffs would get between "15 and 30 percent return on their investment."

129.   In October of 2009 ANTHONY JOHNSON said defendant VINCENT PUMA and Defendant ANTHONY JOHNSON were partners.

130.   Defendant ANTHONY JOHNSON said defendant PUMA was an inside guy and he was going to switch everything to VINCENT PUMA'S company.

131.   In or about October of 2009 ANTHONY JOHNSON told plaintiffs TELLONE that he switched company names so frequently from ARC to GIBRALTAR to RAHFCO "to keep tax people off his back."

132.   In October of 2009, upon information and belief, ANTHONY JOHNSON received $500,000.00 to invest in A&B Investments from plaintiffs TELLONE and never invested all the money with RAHFCO.

133.   In or about October of 2009, Defendant ANTHONY JOHNSON received $300,000.00 of plaintiffs' TELLONE for the purposes of investing in ERFW through RAHFCO.

134.   Pursuant to the information filed by the United States District Attorney of the Eastern District of New York, (Docket #: 11-CR-00287), upon information and belief Defendant ANTHONY JOHNSON admitted that he invested in the ventures defendants

PERMAPAVE and VERIGREEN and the investments would return a guaranteed 23% return on the investment within sixty (60) to ninety (90) days.

135.   Pursuant to same information, Defendant ANTHONY JOHNSON, upon information and belief was a 50% owner of defendant RAHFCO. Defendant ANTHONY JOHNSON and defendant RANDY HANSEN are 50% owners & partners in all RAHFCO defendants.

136.   Defendant ANTHONY JOHNSON failed to include his name in the RAHFCO prospectus.  He is not mentioned even once.

137.   Defendant ANTHONY JOHNSON is not listed in the RAHFCO prospectus in the section "An Action Against Partnerships and Affiliates".

138.   In a letter to plaintiff FIEDERLEIN in late summer of 2007, Defendant ANTHONY JOHNSON stated he would get 9.25% on his investment.

139.   On June 11, 2007, in an email from Defendant ANTHONY JOHNSON to plaintiff FIEDERLEIN, ANTHONY JOHNSON said he would earn 8.25% interest.

140.   Plaintiff FIEDERLEIN never received this return.

141.   On or about, April 6, 2007, plaintiff FIEDERLEIN received a letter stating that GLEN GRIFFIN was involved in the investing.

142.   On or about, April 1, 2009, Defendant ANTHONY JOHNSON told plaintiff FIEDERLEIN to transfer money in the name of RAHFCO.  Plaintiff FIEDERLEIN invested $150,000.00 transferring the money to RAHFCO.

143.   On or about June 1, 2009, defendant ANTHONY JOHNSON confirmed a $100,000.00 investment of plaintiff FIEDERLEIN with returns of 9.5% and a 20% stock dividend.

144.   On or about June 10, 2010, ANTHONY JOHNSON confirmed an investment in defendant corporation PERMAPAVE with a 23.5% percent return in no longer than ninety (90) days.  This return never materialized.

145.   On or about April 1, 2010, plaintiff FIEDERLEIN invested $140,000.00 into the fund "GLD One Fund" and was promised a 19% to 30% return.

146.   On or about October 29, 2006, ANTHONY JOHNSON confirmed plaintiff's investment of $100,000.00 through defendant GLENN GRIFFIN'S account.

147.   Plaintiffs relied on defendant ANTHONY JOHNSON'S misrepresentations resulting in plaintiffs' continued investment.

<u>DEFENDANTS RANDY HANSEN</u>
<u>AND ALL RAHFCO'S FRAUDULENT</u>
<u>STATEMENTS, MISREPRESENTATIONS AND ACTS</u>

148.   The total extent of the fraud committed by defendants RANDY HANSEN and all RAHFCO defendants is exclusively within their knowledge.

149.   Defendant RANDY HANSEN and defendant ANTHONY JOHNSON formed the investment company RAHFCO FUNDS LP and also formed the general partner RAHFCO MANAGEMENT GROUP, LLC whose address is 16423 400th Avenue, Turton, SD 57477, on or about March 2007; a property owned by HANSEN HOLDINGS LP.

150.   That pursuant to Information filed by the United States District Attorney of the Eastern District of New York, upon information and belief RAHFCO stands for Randy and Anthony Hedge Fund Company.

151.   That pursuant to same Information, upon information and belief as of April 2010, RAHFCO'S investment strategy was failing, and it was unable to meet its margin calls.

152.   That pursuant to same Information, defendant RANDY HANSEN with defendant ANTHONY JOHNSON failed to disclose information regarding the hedge fund's problems to RAHFCO'S investors and therefore plaintiffs as well.

153.   Plaintiff KRASNER directly invested with defendant RANDY HANSEN and RAHFCO SELECT on or about February 24, 2009, in the amount of $50,000.00.

154.   That plaintiffs KRASNER investment of $50,000.00 on February 24, 2009, was not deposited into defendant RAHFCO SELECT'S account, but self-endorsed "for deposit only" by defendant TARA HANSEN-LEINEN.

155.   That plaintiffs KRASNER and TELLONE did not receive a K-1 statement from defendants RAHFCO FUNDS LP, RAHFCO MANAGEMENT GROUP until on or about the 2010 calendar year.

156.   That plaintiffs TELLONE had invested with defendants RAHFCO since 2007.

157.   That pursuant to the RAHFCO prospectus "the general partner will provide a Schedule K-1 to each limited partner for any given calendar year prior to April 15 of the following year.  In the event that the Schedule K-1 is not available by such date, a limited partner will have to pay taxes based on an estimate amount."

158.   That upon information and belief other RAHFCO Ponzi scheme victims received K-1 statements every year including but not limited to the calendar year for 2009.

159.   Upon information and belief a letter dated March 7, 2007, defendant RANDY HANSEN wrote to then investors of CAPSTONE TRADING GROUP, GIBRALTAR FUNDS, GTO I, GTO II, GIBRALTAR I, GIBRALTAR II, IIE and IIE II, the CAPSTONE TRADING LLC was an Oklahoma limited liability company.

160.   Pursuant to same letter dated March 5, 2007, upon information and belief, defendant RANDY HANSEN was to dissolve the above limited partnerships so that he could create RAHFCO MANAGEMENT GROUP with defendant ANTHONY JOHNSON.

161.   Upon information and belief, the previously mentioned Oklahoma limited partnerships and funds were never dissolved as RANDY HANSEN expressly stated they would be in his letter dated March 5, 2007.

162.   That defendant RANDY HANSEN did not dissolve IIE I or IIE II in 2007, but the Oklahoma Tax Commission suspended Innovative Investment Enterprise, Inc., for failure to pay taxes.

163.   That defendant RANDY HANSEN did not dissolve Gibraltar Trading Opportunities II, Inc., (GTO II) in 2007, but the Oklahoma Tax Commission suspended Gibraltar Trading Opportunities II, Inc, (GTO II) for failure to pay taxes.

164.   Upon information and belief, both defendant RANDY HANSEN and defendant ANTHONY JOHNSON, were partners in the previous limited partnerships, employed defendants WARD ONSA and VINCENT PUMA and the then newly formed RAHFCO MANAGEMENT GROUP LLC.

165.   Upon information and belief, RANDY HANSEN knew his partner defendant ANTHONY JOHNSON continued to solicit business under the GIBRALTAR FUNDS name.

- 31 -

166.   On or about Spring of 2011 defendant RANDY HANSEN told plaintiff TELLONE that defendant ANTHONY JOHNSON and defendant RANDY HANSEN were partners in defendant RAHFCO.

167.   Upon information and belief, on or about April 23, 2011, defendant RANDY HANSEN told a RAHFCO Ponzi scheme victim that GIBRALTAR was only around for a brief time.

168.   Defendant GIBRALTAR Funds existed for a minimum of three (3) years dating from 2004 until March 2007.

169.   Upon information and belief, on or about April 21, 2011, in an email from defendant RANDY HANSEN to a RAHFCO Ponzi scheme victim, defendant RANDY HANSEN stated he was unfamiliar with GTO II and IIE.

170.   Upon information and belief, in 2005 defendant RANDY HANSEN was the president of GTO II, INC.

171.   On or about May 16, 2011, upon information and belief, defendant RANDY HANSEN admitted to a RAHFCO Ponzi scheme victim that defendant ANTHONY JOHNSON was involved with defendant RAHFCO, as defendant RANDY HANSEN told the Ponzi scheme victim when people requested redemptions, defendants ANTHONY JOHNSON, HUDSON PARTNERS NYC LLC, and VINCENT PUMA handled redemptions.

172.   Defendant RANDY HANSEN and defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP, LLC, represented gains on all quarterly statements.

173. The quarterly statements that plaintiffs and RAHFCO Ponzi scheme victims received were material misrepresentations of actual returns as plaintiffs lost money.

174. That the material misrepresentations in the quarterly statements by RAHFCO indicating returns of up to 18.23% for a 12 month period were the direct result of and led plaintiffs and other Ponzi scheme victims to continue investing with defendant RANDY HANSEN and ALL RAHFCO defendants.

175. That every quarterly statement from the third quarter in 2007 until and through the last quarter of 2010 was "presented" by SFG Accounting Professionals LLC.

176. Upon information and belief on or about April 29, 2011, defendant RAHFCO MANAGEMENT GROUPS, LLC'S website stated that "Since we received our K-1s from Hudson our advisor and trader late we have been pushed to get yours as soon as we can. All K-1s should now be out."

177. That Hudson Partners NYC LLC and defendant VINCENT PUMA, the sub-advisor and trader for all RAHFCO defendants and produced K-1s for all RAHFCO defendants.

178. That because the K-1s materially misrepresented true investment activity, defendant VINCENT PUMA and defendant HUDSON PARTNERS NYC LLC'S material misrepresentations led to plaintiffs' continued investment with defendants RANDY HANSEN, VINCENT PUMA, WARD ONSA, all RAHFCO defendants and ANTHONY JOHNSON

179. Upon information and belief, on or about April 27, 2011, a Ponzi scheme victim spoke with defendant VINCENT PUMA and defendant PUMA stated that PUMA

and defendant HUDSON PARTNERS NYC LLC had no current commercial relationship to provide services to either RAHFCO or GIBRALTAR and he last did business with RAHFCO three years ago.

180.   That the statement from defendant VINCENT PUMA on April 27th, 2011, directly contradicts RAHFCO'S statement on its website on April 29, 2011, stating RAHFCO received its K-1s from HUDSON our adviser and trader late.

181.   That defendant RANDY HANSEN'S material misrepresentations, fraudulent corporations, limited liability companies, limited liability partnerships, and partnership with defendant ANTHONY JOHNSON, which began sometime in 2004 and continued through 2011 directly caused plaintiffs to invest with defendant RANDY HANSEN and all RAHFCO defendants.

## DEFENDANTS VINCENT PUMA AND HUDSON PARTNERS NYC LLC's FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS

182.   The total extent of the fraud committed by defendants VINCENT PUMA and defendant HUDSON PARTNERS NYC LLC is exclusively within their knowledge.

183.   Defendants PUMA and HUDSON PARTNERS were the sub-advisor for RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC until and through 2011.

184.   That on April 29, 2011, defendant RAHFCO'S website stated "Since we received our K-1s from Hudson our advisor and trader late we have been pushed to get yours out as soon as we can. All K-1s should now be out."

185.   That defendant VINCENT PUMA, was an employee of defendant RAHFCO MANAGEMENT GROUP, LLC., and defendants RANDY HANSEN and ANTHONY JOHNSON'S prior investment companies/funds.

186.   Upon information and belief, on April 27, 2011, a Ponzi scheme victim spoke with defendant PUMA who stated PUMA and defendant HUDSON PARTNERS do not have a current commercial relationship to provide services to either defendants RAHFCO or GIBRALTAR.

187.   Upon information and belief, in that same conversation on April 27, 2011, defendant VINCENT PUMA and on behalf of defendant HUDSON PARTNERS NYC LLC stated that they last did business with RAHFCO three plus years ago.

188.   Upon information and belief, that on or about May 2, 2011, same Ponzi scheme victim spoke with defendant RANDY HANSEN who stated HUDSON is "advisor and trader" for RAHFCO S&P trades.

189.   Upon information and belief, that in that same conversation defendant RANDY HANSEN stated to same Ponzi scheme victim that defendant PUMA and defendant HUDSON PARTNERS NYC LLC told defendant HANSEN that defendants PUMA and HUDSON PARTNERS hoped to pay out all legitimate RAHFCO accountholders.

190.   That defendant HUDSON PARTNERS produced the K-1 statements for defendants RAHFCO FUNDS and RAHFCO MANAGEMENT GROUP LLC and thereby misrepresented partnership profits and losses on same K-1 statements.

191.   That as a direct result of the misrepresentations on the K-1 statements produced by defendant PUMA and defendant HUDSON PARTNERS NYC LLC,

plaintiffs and other Ponzi scheme victims invested and continued to invest with all RAHFCO defendants.

192. That plaintiffs relied on same misrepresentations; had the K-1 statements been accurate, plaintiffs would have ceased their investments with defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC.

193. That as the sub-advisor for defendant RAHFCO MANAGEMENT GROUP LLC and a partner with defendant ANTHONY JOHNSON, defendant VINCENT PUMA and defendant HUDSON PARTNERS NYC LLC, knew or should have known of the Ponzi scheme being perpetrated upon plaintiffs and other Ponzi scheme victims.

### DEFENDANT WARD ONSA'S FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS

194. The total extent of the fraud committed by defendant WARD ONSA is exclusively within his knowledge.

195. Upon information and belief on April 23, 2011, defendant RANDY HANSEN told a RAHFCO Ponzi scheme victim when asked "Do you think WARD ONSA was involved in this with ANTHONY JOHNSON", defendant RANDY HANSEN'S answer was "absolutely".

196. WARD ONSA is a trader, employee and agent of defendant RAHFCO MANAGEMENT GROUP LLC and as such, upon information and belief, knew or should have known about the fraud and misrepresentations perpetrated against plaintiffs.

197. That defendant WARD ONSA was an employee, agent and trader for defendants ANTHONY JOHNSON and RANDY HANSEN'S prior mentioned companies/funds that defrauded plaintiffs and investors.

198. Upon information and belief, defendant WARD ONSA, as a trader, materially assisted in perpetrating the frauds against plaintiffs and helped contribute to the false quarterly statements.

199. Upon information and belief, WARD ONSA, as a trader for defendant RAHFCO MANAGEMENT GROUP LLC, misrepresented to plaintiffs, investments that were made.

200. That due to defendant WARD ONSA'S misrepresentations and fraudulent acts, plaintiffs relied on the misrepresentations and was a direct result of plaintiffs' continued investments within the Ponzi scheme.

201. That defendant ANTHONY JOHNSON told plaintiff KRASNER that defendant ONSA was the investment guru, and ONSA did all the charts and graphs.

202. That defendant ONSA failed to include his company New Century Investment Management LLC as a conflict of interest in the defendant RAHFCO FUNDS LP prospectus.

203. That defendant ONSA had an obligation to inform plaintiffs of this conflict of interest and his failure to do so amounts to a material misrepresentation.

204. That had plaintiffs known multiple traders at defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC had a conflict of interest, plaintiffs would not have invested with defendants.

205. That defendant ONSA and all defendants directly connected with defendant RAHFCO materially misrepresented to plaintiffs their conflicts of interest and therefore defrauded plaintiffs.

### DEFENDANT KEVIN NUGENT'S
### FRAUDULENT STATEMENTS,

## MISREPRESENTATIONS AND ACTS

206.   The total extent of the fraud committed by defendant KEVIN NUGENT is within his knowledge.

207.   Upon information and belief, defendant KEVIN NUGENT, as a trader listed in the RAHFCO prospectus, materially assisted in perpetrating the frauds against plaintiffs and helped contribute to the false quarterly statements.

208.   Upon information and belief, KEVIN NUGENT, as a trader for defendant RAHFCO MANAGEMENT GROUP LLC, misrepresented to plaintiffs their investments that were made on their behalf.

209.   That due to defendant KEVIN NUGENT'S misrepresentations, plaintiffs relied on the misrepresentations and was a direct result of plaintiffs' continued investments within the Ponzi scheme.

### DEFENDANT TARA HANSEN-LEINEN'S
### FRAUDULENT STATEMENTS,
### MISREPRESENTATIONS AND ACTS

210.   The total extent of the fraud committed by TARA HANSEN-LEINEN is within her knowledge.

211.   Defendant TARA HANSEN-LEINEN as the Vice President of Operations at defendant RAHFCO MANAGEMENT GROUP had a fiduciary duty to inform plaintiffs of the fraud occurring at defendant RAHFCO MANAGEMENT GROUP and all other RAHFCO defendants.

212.   That defendant TARA HANSEN-LEINEN had a fiduciary duty to inform plaintiffs of defendant ANTHONY JOHNSON'S indictments and failed to do so.

213.   That defendant TARA HANSEN-LEINEN materially misrepresented to plaintiffs those who were working at and for defendant RAHFCO MANAGEMENT GROUP, specifically defendant ANTHONY JOHNSON by failing to inform plaintiffs of defendant ANTHONY JOHNSON'S 50% ownership interest.

214.   That defendant TARA HANSEN-LEINEN as defendant RAHFCO MANAGEMENT GROUP'S Vice President of Operations, upon information and belief had a responsibility to oversee the transactions.

215.   That defendant TARA HANSEN-LEINEN materially misrepresented defendant RAHFCO MANAGEMENT GROUP'S and all RAHFCO defendants transactions as a result of her failure to properly monitor earnings figures for all RAHFCO defendants.

216.   That defendant TARA HANSEN-LEINEN committed fraud upon plaintiffs ALISON KRASNER and STEVEN KRASNER when defendant TARA HANSEN-LEINEN self-endorsed "for deposit only" a check for deposit only that was paid to the order of RAHFCO SELECT in the amount of $50,000.00 on or about February 24, 2009.

217.   That upon information and belief, the $50,000.00 plaintiffs ALISON KRASNER and STEVEN KRASNER intended to be invested with RAHFCO SELECT on February 24, 2009, was never invested based on defendant TARA HANSEN-LEINEN'S self-endorsement; and the funds were fictitiously added to plaintiffs' account with defendant RAHFCO.

218.   Upon information and belief, defendant TARA HANSEN-LEINEN took plaintiffs money intended to be invested with PONZI SCHEME defendants, for her own personal use.

219.    That defendant TARA HANSEN-LEINEN'S self-endorsement on same check, and upon information and belief, the failure to invest same $50,000.00 with RAHFCO and as a result material misstatements given to plaintiffs KRASNER directly resulted in their continued investing in defendant RAHFCO.

220.    That TARA HANSEN-LEINEN'S material misstatements and failure to inform all plaintiffs of the frauds occurring at defendant RAHFCO directly resulted in their continued investments with defendants RAHFCO MANAGEMENT GROUP LLC.

221.    That defendant TARA HANSEN-LEINEN failed to update plaintiffs and inform them of defendant ONSA'S conflicting interest, thereby misrepresenting to plaintiffs, RAHFCO'S ability to operate unbiased.

222.    That had plaintiffs known multiple traders at defendant RAHFCO MANAGEMENT GROUP and all RAHFCO defendants had a conflicting interest, plaintiffs would not have invested with defendants.

223.    That defendant ONSA'S conflicting interest upon information and belief led to his fraudulent acts.

### DEFENDANT ENTRUST RETIREMENT SERVICES INC.'S FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS.

224.    The total extent of the fraud committed by defendant's ENTRUST RETIREMENT SERVICES, INC. is within its knowledge.

225.    Plaintiffs KRASNER and FIEDERLEIN had invested in IRA accounts through defendant ENTRUST RETIREMENT SERVICES, INC., to be transferred to defendant RAHFCO GROWTH FUNDS LLC.

- 40 -

226.   Plaintiffs FIEDERLEIN and KRASNER were advised by defendant ANTHONY JOHNSON to invest their IRAs with defendant ENTRUST RETIREMENT SERVICES, INC., who would then invest the IRA accounts with defendant RAHFCO GROWTH FUND.

227.   That upon information and belief, defendant ENTRUST GROUP, defendant ANTHONY JOHNSON, defendant RANDY HANSEN, and defendant RAHFCO MANAGEMENT GROUP, LLC, all conspired together to induce same plaintiffs and other victims of the ponzi scheme to transfer funds to an IRA accounts through defendant ENTRUST to be invested in defendant RAHFCO GROWTH FUND.

228.   That defendant ANTHONY JOHNSON directed the plaintiffs KRASNER and FIEDERLEIN to wire funds directly to defendant ENTRUST which would then transfer money to defendant RAHFCO MANAGEMENT GROUP.

229.   That defendant ANTHONY JOHNSON required the investment process with defendant RAHFCO GROWTH FUND to be sent through defendant ENTRUST.

230.   That upon information and belief, defendants RANDY HANSEN and ENTRUST knew, encouraged and helped defendant ANTHONY JOHNSON require plaintiffs to transfer their IRA funds through defendant ENTRUST prior to investing with defendant RAHFCO GROWTH FUND.

231.   That defendant ENTRUST RETIREMENT SERVICES knew or should have known that defendant RAHFCO MANAGEMENT GROUP, LLC was in the process of defrauding its customers.

232.   That defendant ENTRUST RETIREMENT SERVICES had a fiduciary duty to its clients and plaintiffs to perform a due diligence review of defendant RAHFCO

MANAGEMENT GROUP'S investments. If defendant ENTRUST RETIREMENT SERVICES had performed its due diligence, defendant ENTRUST RETIREMENT SERVICES would not have invested plaintiffs' money with defendant RAHFCO MANAGEMENT GROUP or defendant RAHFCO GROWTH FUND.

233.   That defendant ENTRUST RETIREMENT SERVICES knew or should have known defendant ANTHONY JOHNSON had been suspended as a practicing broker, and had a fiduciary duty to inform plaintiffs of defendant ANTHONY JOHNSON'S criminal indictments and suspension as a practicing broker.

234.   That defendant ENTRUST RETIREMENT SERVICES misrepresented to plaintiffs FIEDERLEIN and KRASNER by failing to inform them of defendant ANTHONY JOHNSON'S prior indictments and suspension.

235.   That upon information and belief, a member of defendant ENTRUST RETIREMENT SERVICES, defendant ANTHONY JOHNSON, and defendant RANDY HANSEN set up a scheme so that defendant ANTHONY JOHNSON would require plaintiffs to transfer funds to defendant ENTRUST RETIREMENT SERVICES which would then invest plaintiffs' funds in an IRA account through defendant RANDY HANSEN and defendant RAHFCO MANAGEMENT GROUP, specifically defendant RAHFCO GROWTH FUND.

236.   That defendant ANTHONY JOHNSON would not allow plaintiffs KRASNER or FIEDERLEIN to invest pension and IRA directly with defendant RAHFCO GROWTH FUND, required them to transfer funds through defendant ENTRUST.

237.   That defendants ANTHONY JOHNSON, RANDY HANSEN, and ENTRUST RETIREMENT SERVICES were all involved and cooperated to defraud

- 42 -

plaintiffs and that defendant ANTHONY JOHNSON was listed as an authorized financial advisor and interested party for plaintiff FIEDERLEIN, and defendant's firm name as, "RAHFCO" and its address as 3229 Nic Ann Court, Souix Falls, SD.

238.   Upon information and belief, that on or about April 20, 2011, a victim of defendants had his Merrill Lynch advisor speak with a member of defendant ENTRUST RETIREMENT SERVICES, Jose Mora, who said "IIE" was some how converted or subsumed into RAHFCO FUNDS and "IIE" no longer exists.

239.   Upon information and belief, the same victim of defendants' Ponzi scheme received account statements from ENTRUST GROUP, and had investments totaling more than $61,000.00 for the first quarter of 2011, invested in INNOVATIVE INVESTMENT ENTERPRISES INC., also known as IIE.

240.   That upon information and belief, on June 1, 2006, same Ponzi scheme victim received a letter from defendant RANDY HANSEN and defendant ANTHONY JOHNSON confirming an investment in INNOVATIVE INVESTMENT ENTERPRISES INC., also known as IIE.

241.   That plaintiffs KRASNER and FIEDERLEIN relied upon defendant ENTRUST RETIREMENT SERVICES' misrepresentations and its failures to inform plaintiffs that defendant ANTHONY JOHNSON was indicted for securities fraud and upon information and belief it was working with defendants RANDY HANSEN and RAHFCO MANAGEMENT GROUP LLC.

242.   That plaintiffs relied upon ENTRUST RETIREMENT SERVICES' misrepresentations that plaintiffs were required to invest their funds with defendant ENTRUST in order to invest their funds in an IRA with defendant RAHFCO GROWTH

FUND LLC, defendant RAHFCO MANAGEMENT GROUP LLC and defendant RANDY HANSEN.

## GLENN GRIFFIN'S FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS

243.    The total extent of the fraud committed by defendant GLENN GRIFFIN is within his knowledge.

244.    That defendant GLENN GRIFFIN helped defendants ANTHONY JOHNSON, RANDY HANSEN, PONZI SCHEME defendants, defendant WARD ONSA, and defendant VINCENT PUMA perpetrate and cause plaintiffs to invest with the defendants by materially misrepresenting facts to plaintiff FIEDERLEIN, plaintiff KRASNER and plaintiff TELLONE.

245.    That defendant GLENN GRIFFIN knew or should have known of the Ponzi scheme perpetrated by defendants.

246.    Upon information and belief, defendant GLENN GRIFFIN received money from plaintiffs on behalf of defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS, and all RAHFCO defendants.

247.    That on or about the summer of 2004 and 2005 GLENN GRIFFIN represented to the plaintiffs that he was making "a ton of money".

248.    That on or about the summer of 2004 and 2005 GLENN GRIFFIN said to plaintiff TELLONE the more money he put into the funds, the more money everyone would make.

249.    Upon information and belief, GLENN GRIFFIN was receiving a commission as an unlicensed broker for inducing victims and plaintiffs herein to invest

with PONZI SCHEME defendants, RANDY HANSEN, GIBRALTAR FUNDS, all

RAHFCO defendants, ANTHONY JOHNSON, VINCENT PUMA, and WARD ONSA.

250. That on or about the summer of 2004 and 2005 defendant ANTHONY

JOHNSON told plaintiff TELLONE that he should not tell defendant GLENN GRIFFIN he

has more than $300,000.00 invested because "I would have to give him 5%, but it won't

come out of yours it will come from someone else's investments."

251. That on or about the summer of 2005, defendant GLENN GRIFFIN

represented to plaintiffs that he was investing with defendant ANTHONY JOHNSON

and said there was no risk in his investments.

252. That on or about the spring/summer of 2010, defendant GLENN GRIFFIN

told plaintiffs FIEDERLEIN that defendant PERMAPAVE was a great deal and that he

went with defendant ANTHONY JOHNSON and looked at defendant PERMAPAVE'S

books.

253. That on or about the spring/summer of 2010, defendant GLENN GRIFFIN

told plaintiff that he met with the defendant PERMAPAVE representatives and that it

was a short-term deal, it was guaranteed and that there was no way they could lose

money.

254. Upon information and belief, defendants GLENN GRIFFIN and ANTHONY

JOHNSON never viewed defendant PERMAPAVE'S books or met with its

representatives.

255. Upon information and belief, defendant GLENN GRIFFIN informed plaintiff

FIEDERLEIN of these false facts, so that plaintiff would invest and defendant GLENN

GRIFFIN would receive his commission and other funds from investors in classic Ponzi scheme fashion.

256.   According to the Information filed by the United States District Attorney for the Eastern District of New York, upon information and belief defendant ANTHONY JOHNSON admitted he used the investments from all plaintiffs for defendant PERMAPAVE and other investments, to pay back other investors in classic Ponzi scheme fashion.

257.   Upon information and belief GLENN GRIFFIN was involved materially in the Ponzi scheme perpetrated by defendants and helped induce plaintiffs and other victims to invest in the Ponzi scheme.

258.   That on or about October 4, 2005, plaintiff FIEDERLEIN wrote a check to defendant GLENN GRIFFIN for $100,000.00 so defendant GLENN GRIFFIN could invest it with PONZI SCHEME defendants and defendants RANDY HANSEN, GIBRALTAR FUNDS, and ANTHONY JOHNSON.

259.   That the $100,000.00 plaintiff FIEDERLEIN invested on or about October 4, 2005, was done through and caused by defendant GLENN GRIFFIN.

260.   That upon information and belief, GLENN GRIFFIN received a commission on the $100,000.00 he received on behalf of plaintiff FIEDERLEIN.

261.   That on or about April 6, 2007, defendant ANTHONY JOHNSON and defendant GLENN GRIFFIN allowed a portion of GLENN GRIFFIN'S account to be signed over to plaintiff FIEDERLEIN.  That upon information and belief, defendant GLENN GRIFFIN was investing plaintiff's monies up until this time.

262.   That defendant GLENN GRIFFIN knew or should have known that the plaintiffs he induced to invest with defendants ANTHONY JOHNSON, RANDY HANSEN, PONZI SCHEME defendants, VINCENT PUMA and WARD ONSA were not legitimate and his material misrepresentations directly resulted in plaintiffs' lost investments.

263.   That had defendant GLENN GRIFFIN not misrepresented to plaintiffs, plaintiffs would have ceased investing with same defendants.

## DEFENDANTS CHRISTINE AND ROBERT JOHNSON'S FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS

264.   The total extent of the fraud committed by defendants ROBERT and CHRISTINE JOHNSON is within their knowledge.

265.   That upon information and belief, defendants ROBERT and CHRISTINE JOHNSON, knew or should have known that defendant ANTHONY JOHNSON was misrepresenting information to plaintiffs and committing securities fraud.

266.   That defendant ANTHONY JOHNSON persuaded plaintiffs TELLONE to invest in defendants ANTHONY JOHNSON'S and RANDY HANSEN'S, defendant GIBRALTAR FUNDS in or about 2005.

267.   Upon information and belief, in or about June of 2005 defendants ANTHONY JOHNSON and RANDY HANSEN'S Ponzi scheme used a straw company A.R.C. VENTURES standing for, upon information and belief, ANTHONY, ROBERT and CHRISTINE VENTURES to pay out plaintiffs and keep the appearance of legitimate returns.

268. That CHRISTINE JOHNSON endorsed checks on behalf of ARC VENTURES in June of 2005.

269. Upon information and belief, CHRISTINE JOHNSON knew the investments by plaintiffs TELLONE were to be invested in GIBRALTAR FUNDS, a fraudulent company.

270. That CHRISTINE JOHNSON'S failure to inform plaintiffs TELLONE that she was endorsing the checks and not invest plaintiffs' money with GIBRALTAR FUNDS was a material misrepresentation.

271. That plaintiffs TELLONE relied upon defendants ANTHONY JOHNSON, CHRISTINE JOHNSON and ROBERT JOHNSON'S deposits, and misrepresentations which directly resulted in plaintiffs TELLONE continuing to invest with defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS, and eventually defendant RAHFCO MANAGEMENT GROUP.

272. That upon information and belief defendants CHRISTINE JOHNSON and ROBERT JOHNSON received commissions for inducing plaintiffs and other victims of defendants to invest.

273. That upon information and belief, defendants CHRISTINE JOHNSON and ROBERT JOHNSON knew defendant ANTHONY JOHNSON was operating a Ponzi scheme with defendant RANDY HANSEN beginning at least in 2005.

274. ROBERT JOHNSON and CHRISTINE JOHNSON knew or should have known ANTHONY JOHNSON had a prior federal conviction.

275. That several times throughout the course of plaintiffs KRASNER investing with defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS, and

eventually defendant RAHFCO MANAGEMENT GROUP, plaintiff KRASNER asked defendant ROBERT JOHNSON about defendant ANTHONY JOHNSON'S investment practices and defendant ROBERT JOHNSON failed to mention the Ponzi Scheme. Defendant ROBERT JOHNSON never disclosed to any plaintiff that ANTHONY JOHNSON had a prior federal conviction.

276.   That defendants CHRISTINE JOHNSON and ROBERT JOHNSON'S failure to inform plaintiffs TELLONE and KRASNER of defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS, and eventually defendant RAHFCO MANAGEMENT GROUP'S fraud resulted in a misrepresentation.

277.   That CHRISTINE JOHNSON and ROBERT JOHNSON knew plaintiffs KRASNER personally, and at no point did defendants CHRISTINE JOHNSON or ROBERT JOHNSON inform plaintiffs KRASNER that defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS, and RAHFCO MANAGEMENT GROUP were operating a fraudulent Ponzi scheme.

278.   That defendant ROBERT JOHNSON and defendant CHRISTINE JOHNSON'S failure to inform plaintiffs KRASNER and TELLONE of defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS and RAHFCO MANAGEMENT GROUP'S fraud resulted in a fraud in and of itself and a material misrepresentation.

279.   That defendants ROBERT and CHRISTINE JOHNSON'S failure to inform plaintiffs TELLONE and KRASNER of defendants ANTHONY JOHNSON, RANDY HANSEN, GIBRALTAR FUNDS and RAHFCO MANAGEMENT GROUP's frauds

directly resulted in same plaintiffs investments, continued investments and significant damages.

## DEFENDANT SPICER JEFFRIES LLP'S FRAUDULENT STATEMENTS, MISREPRESENTATIONS AND ACTS

280.   The total extent of the fraud committed by defendant SPICER JEFFRIES is within its knowledge.

281.   That defendant SPICER JEFFRIES failed to properly audit RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC.

282.   That upon information and belief sometime in 2008 defendant SPICER JEFFRIES LLP was engaged in an audit of the financial statements of RAHFCO FUNDS LP.

283.   Upon information and belief defendant SPICER JEFFRIES, through the care of general partner and defendant RANDY HANSEN, mailed to then investors, a statement providing a review of each party's capital account according to RAHFCO MANAGEMENT GROUP LLC.

284.   That plaintiffs relied on the RAHFCO prospectus, including defendant SPICER JEFFRIES LLP'S as defendant RAHFCO'S auditor, and statements sent to RAHFCO victims and upon information and belief, plaintiffs as well.

285.   That in 2008, upon information and belief, plaintiffs TELLONE were invested within defendant RAHFCO FUNDS and would have received the auditor information for their review from defendant SPICER JEFFRIES.

286.   Upon information and belief, defendant SPICER JEFFRIES failed to properly audit defendant RAHFCO FUNDS LP.

- 50 -

287.     That on or about Spring of 2011, defendant RANDY HANSEN sent a letter to plaintiffs stating "It has recently come to my attention that for some time, the earnings figures in our statements have been inaccurate."

288.     Upon information and belief, had defendant SPICER JEFFRIES properly audited defendant RAHFCO FUNDS LP, they would have found the inaccurate earnings figures which had been inaccurate for some time.

289.     Upon information and belief, if SPICER JEFFRIES was no longer the auditor on behalf of defendant RAHFCO FUNDS after the year 2007, it had a fiduciary obligation to inform investors of its terminated relationship with defendant RAHFCO MANAGEMENT GROUP, LLC. and defendant RAHFCO FUNDS LP.

290.     Upon information and belief, defendant SPICER JEFFRIES failed to inform plaintiffs and other RAHFCO victims of its terminated relationship with defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC and breached its fiduciary duty owed to those investing with defendants RAHFCO FUNDS LP and RAHFCO MANAGEMENT GROUP LLC.

**DEFENDANTS SUSAN K. MEIDINGER
AND MEIDINGER & ASSOCIATES, CPA, PLLC,
FRAUDULENT STATEMENTS,
MISREPRESENTATIONS AND ACTS**

291.     The total extent of the fraud committed by defendants SUSAN K. MEIDINGER and SUSAN MEIDINGER & ASSOCIATES, CPAS, PPLC is within their knowledge.

292.     Defendant SUSAN K. MEIDINGER, and defendant MEIDINGER & ASSOCIATES was the accountant for defendant CAPSTONE INVESTMENT FUNDS,

LLC and defendant GIBRALTAR FUNDS from January 2006 through March 2007, funds run by defendants ANTHONY JOHNSON and RANDY HANSEN.

293.   Defendant SUSAN MEIDINGER and defendant MEIDINGER & ASSOCIATES presented quarterly statements to plaintiffs TELLONE for CAPSTONE INVESTMENT FUNDS representing the funds of CAPSTONE, GTO 1 and GTO 2.

294.   Defendant SUSAN MEIDINGER and MEIDINGER & ASSOCIATES presented the quarterly statements for GTO II, upon information and belief, a fund presented to Ponzi scheme victims and plaintiffs TELLONE, as an Oklahoma corporation.

295.   Upon information and belief, GTO II INC. and Capstone Trading Group, LLC, funds which defendants SUSAN MEIDINGER and MEIDINGER & ASSOCIATES presented quarterly statements for and were founded by defendant RANDY HANSEN and defendant ANTHONY JOHNSON.

296.   Upon information and belief, the statements presented by defendant MEIDINGER and defendant MEIDINGER & ASSOCIATES were inaccurate quarterly account statements to plaintiffs TELLONE and victims of defendant CAPSTONE INVESTMENT FUNDS, and upon information and belief, GTO 2.

297.   That plaintiffs TELLONE relied upon the inaccurate statements presented by defendant SUSAN MEIDINGER and defendant MEIDINGER & ASSOCIATES.

298.   That defendant MEIDINGER and MEIDINGER & ASSOCIATES' fraudulent statements were a direct result of plaintiffs TELLONE investing with defendants RAHFCO and their continued investments.

299.   That had defendant SUSAN MEIDINGER and MEIDINGER &

ASSOCIATES presented accurate quarterly statements, plaintiffs TELLONE would have

ceased investing with defendant GIBRALTAR FUNDS, defendant ANTHONY

JOHNSON, defendant RANDY HANSEN and eventually defendant RAHFCO

MANAGEMENT GROUP.

**DEFENDANT SFG ACCOUNTING PLLC'S
FRAUDULENT STATEMENTS,
MISREPRESENTATIONS AND ACTS.**

300.   The total extent of the fraud committed by defendant SFG ACCOUNTING

PLLC is within its knowledge.

301.   On or about the second quarter of 2007 defendant SFG ACCOUNTING

PLLC'S, upon information and belief, was retained by defendant RAHFCO

MANAGEMENT GROUP LLC to be the accountant for same defendants and its funds.

302.   From the second quarter of 2007 until and through the present defendant

SFG ACCOUNTING PLLC presented quarterly statements to plaintiffs and other victims

each and every quarter.

303.   On or about Spring of 2011, defendant RANDY HANSEN sent a letter to

plaintiffs stating "It has recently come to my attention that for some time, the earnings

figures in our statements have been inaccurate."

304.   The earnings figures in the statements defendant RANDY HANSEN and

defendant RAHFCO MANAGEMENT GROUP sent to plaintiffs and other victims of

defendants were "presented by" defendant SFG ACCOUNTING.

305.   The inaccurate earnings figures in the statements were certified and "presented by" defendant SFG ACCOUNTING and distributed to plaintiffs and other Ponzi scheme victims of defendants.

306.   That because the statements had inaccurate earnings figures for some time, defendant SFG ACCOUNTING knew or should have known RAHFCO defendants earnings figures were inaccurate and the statements defendant SFG ACCOUNTING presented were inaccurate statements.

307.   That if in fact defendant SFG ACCOUNTING knew about the fraud, presenting inaccurate quarterly statements to plaintiffs resulted in gross misrepresentation and fraud.

308.   That had defendant SFG ACCOUNTING not known about the fraud, presenting inaccurate quarterly statements to plaintiffs, resulted in gross negligence and material misrepresentations.

309.   Upon information and belief, because of the inaccurate earnings figures on the defendants' statements, defendant SFG ACCOUNTING materially contributed to inaccurate earnings figures and misrepresentations to plaintiffs.

310.   Defendant SFG ACCOUNTING materially misrepresented to plaintiffs the earnings figures on each quarterly statement.

311.   Plaintiffs relied on the earnings figures listed in the quarterly statements presented by defendant SFG ACCOUNTING and distributed on behalf of defendant RANDY HANSEN, defendant ANTHONY JOHNSON, defendant VINCENT PUMA and defendant RAHFCO MANAGEMENT GROUP LLC.

312.   The misrepresented quarterly statements presented by defendant SFG ACCOUNTING was the direct result of plaintiffs continuous investment with defendant RANDY HANSEN, defendant ANTHONY JOHNSON, defendant RAHFCO MANAGEMENT GROUP LLC, and defendant VINCENT PUMA.

313.   Had the earning statements been accurate and not misrepresented by defendant SFG ACCOUNTING and same defendants immediately listed above, plaintiffs would not have continued to invest with defendant RANDY HANSEN, defendant ANTHONY JOHNSON, defendant RAHFCO MANAGEMENT GROUP, LLC, and defendant VINCENT PUMA.

314.   Upon information and belief, defendant VINCENT PUMA and defendant HUDSON PARTNERS NYC, LLC contributed to the misrepresented quarterly statements by providing inaccurate earnings figures.

315.   But for defendant SFG ACCOUNTING'S inability to present accurate earnings figures in the quarterly statements, plaintiffs would have ceased their investments with defendants.

### DEFENDANT WARD ONSA'S PRIOR FRAUD

316.   Upon information and belief, pursuant to a complaint filed by the Commodity Futures Trading Commission on April 1, 2011 in the United States District Court for the Eastern District of Pennsylvania, Docket number 11-CV-02367, defendant WARD ONSA (and New Century Investment Management LLC) allegedly defrauded at least $2.2 million from at least twelve commodity pool participants.

317.   Upon information and belief, such acts by defendant WARD ONSA included providing pool participants with false account statements reflecting fictitious

increases in their account values; while not actually investing participants' funds, misappropriating participants' funds for personal use and using such funds to pay earlier participants of the fund, perpetuating a similar fraud as in the present case.

318.   Defendant WARD ONSA failed to disclose the existence of this prior fraudulent trading operation to plaintiffs.

## PONZI SCHEME DEFENDANTS' ACTIONS

319.   ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, and the other defendants are habitual fraudsters.  This is not the first time that defendants ANTHONY JOHNSON, RANDAL K. HANSEN or WARD ONSA have been involved in similar types of securities fraud litigation.

320.   Most recently defendant ANTHONY JOHNSON, on behalf of other and in concert with defendants RANDAL K. HANSEN, CHRISTINE JOHNSON, ROBERT JOHNSON, all RAHFCO defendants, VINCENT PUMA, WARD ONSA and PONZI SCHEME defendants have lured investors and plaintiffs by guaranteeing them three (3%) percent monthly returns, over thirty-six (36%) percent returns annually.  Defendant ANTHONY JOHNSON on behalf of and as an agent for above defendants claimed that these returns would be paid from legitimate investments.  Same defendants informed

investors that the securities purchased were extremely low risk, and would provide for high returns.

321.   Plaintiffs received RAHFCO'S prospectus whereby plaintiffs detrimentally relied on representations in same prospectus.

322.   Included in the prospectus as RAHFCO'S auditor is defendant SPICER JEFFRIES.

323.   Plaintiffs relied on defendant SPICER JEFFRIES' inclusion in the prospectus believing that RAHFCO'S accounts and funds were being properly audited.

324.   Included in the prospectus and on statements as RAHFCO'S accountant is SFG ACCOUNTING, PLLC, from the second quarter of 2007 until present.

325.   Plaintiffs relied on defendant SFG'S inclusion in the prospectus and quarterly statements believing that RAHFCO'S books, records, statements and the like were prepared pursuant to GAAP formalities.

326.   Defendant SFG failed to perform its duties and presented fraudulent statements to plaintiffs as evidenced by defendant RANDY HANSEN'S letter stating the defendant RAHFCO's earnings figures were inaccurate for some time.

327.   Plaintiffs received statements from "CAPSTONE INVESTGMENT FUNDS" "presented by MEIDINGER & ASSOCIATES, CPA'S, PROF. LLC" and a letter from ANTHONY JOHNSON stating SUSAN M. MEIDINGER would be part of their team and made certain demands of defendants.

328.   Plaintiffs relied on the statements and letter believing that GIBRALTAR'S and CAPSTONE'S accounts, funds, books, statements, records and the like were

prepared pursuant to GAAP formalities.  Upon information and belief, defendant MEIDINGER presented statements for fraudulent companies.

329.   ANTHONY JOHNSON, RANDAL K. HANSEN, CHRISTINE JOHNSON, ROBERT JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN and the PONZI SCHEME defendants' claims were fiction; in classic Ponzi scheme fashion, investors' and plaintiffs' money was paid by incoming funds from new investors, not profits from trading.

330.   Defendants ANTHONY JOHNSON, RANDAL K. HANSEN, and other PONZI SCHEME defendants misappropriated an undetermined amount of investors' money for their own personal benefit including millions of dollars of cash, luxuries and other extravaganzas.  The remaining investor funds were most likely lost in the unprofitable, uncategorizable or undeterminable trades executed by the PONZI SCHEME defendants, including defendants ANTHONY JOHNSON, KEVIN NUGENT, VINCENT PUMA, WARD ONSA, RANDAL K. HANSEN and other PONZI SCHEME defendants, including but not limited to the defendant accountants, legal teams, clearing groups or other investor services who participated in the Ponzi scheme.

331.   Defendant ANTHONY JOHNSON through the use of his agents, specifically defendants ROBERT JOHNSON, CHRISTINE JOHNSON, GLENN

GRIFFIN and any other defendants or individuals associated with defendants ANTHONY JOHNSON, RANDAL K. HANSEN, CHRISTINE JOHNSON, ROBERT JOHNSON and PONZI SCHEME defendants often convinced their victims and plaintiffs to invest significant portions of their life savings with their organizations, placing their financial futures in serious risk. Many of the investors involved were unsophisticated financial investors, who did not understand the risks involved in their investment, and invested a significant portion of their and their families' life savings with defendants ANTHONY JOHNSON, RANDAL K. HANSEN, VINCENT PUMA and PONZI SCHEME defendants; almost all of which was ultimately lost.

332.   Recently PONZI SCHEME defendants stopped paying "profit payments" to investors and defendants' scheme began to collapse. Frequently investors would receive checks from defendant company GIBRALTAR PARTNERS, checks which would bounce due to insufficient funds. Defendants, including ANTHONY JOHNSON and ROBERT JOHNSON, repeatedly made false statements and misleading excuses to investors regarding the bounced checks, delayed payments and the status of the investments to try to lull investors and plaintiffs into complacency and delay the disclosure that the investments were simply part of a Ponzi scheme.

333.   Defendants, including ANTHONY JOHNSON, RANDAL K. HANSEN, CHRISTINE JOHNSON, ROBERT JOHNSON, GLENN GRIFFIN, and the PONZI SCHEME defendants, intentionally deceived investors into buying Ponzi scheme securities through numerous misrepresentations of material facts. Defendants misled and deceived the plaintiffs by claiming that the securities would pay a high rate of return while only subject to low risk, when in fact defendants were simply operating a Ponzi

scheme. In doing so, ANTHONY JOHNSON, RANDAL K. HANSEN and PONZI SCHEME defendants violated the antifraud provisions of Federal Securities Laws, offered and sold unregistered securities, acted as unregistered broker-dealers and defrauded their clients while acting as investment advisors.

## FACTUAL BACKGROUND

334.   Since on or about 2005 plaintiffs STEVE KRASNER, ALLISON KRASNER, MICHELE TELLONE a/k/a MIKE TELLONE, TAMMY TELLONE, DAVID FIEDERLEIN, DAVID FIEDERLEIN as Trustee for the FIEDERLEIN FAMILY LTD PARTNERSHIP, and BARBARA FIEDERLEIN have been sending checks to PONZI SCHEME defendants, specifically defendants ANTHONY JOHNSON, RAHFCO and GIBRALTAR PARTNERS, to be invested in the various Ponzi scheme investment funds.

335.   The following is a non-inclusive list of the checks sent by plaintiffs to defendants to be invested in PONZI SCHEME defendants' funds, which was ultimately lost or is presently unaccounted for due to defendants' Ponzi scheme.

### MICHELE TELLONE a/k/a MIKE TELLONE

### Chase Bank

| Date: | Check #: | Amount: | Payor: | Payee: |
|-------|----------|---------|--------|--------|
| 05/10/2006 | 1043 | $109,000.00 | M. Tellone | Gibraltar Partners |
| 05/10/2007 | 1001 | $ 78,000.00 | M. Tellone | Gibraltar Partners |
| 09/10/2007 | 1070 | $ 55,000.00 | M. Tellone | Gibraltar Partners |
| 10/04/2007 | 1069 | $  5,318.69 | M. Tellone | Gibraltar Partners |
| 05/20/2008 | 1001 | $100,000.00 | M. Tellone | Gibraltar Partners |

| 08/01/2009 | 2331 | $ 33,000.00 | M. Tellone | Gibraltar Partners |
| 12/10/2009 | 1002 | $100,000.00 | M. Tellone | Gibraltar Partners |

## Astoria Federal Savings

| Date: | Check #: | Amount: | Payor: | Payee: |
|---|---|---|---|---|
| 06/08/2005 | 0107 | $100,000.00 | A. Tellone | A.R.C. Ventures |
| 06/23/2005 | 0108 | $200,000.00 | A. Tellone | A.R.C. Ventures |
| 03/13/2006 | 111 | $120,000.00 | A. Tellone | Gibraltar Partners |
| 12/01/2006 | 113 | $300,000.00 | A. Tellone | Gibraltar Partners Inc. |
| 04/28/2008 | 114 | $250,000.00 | A. Tellone | Gibraltar Partners |
| 05/09/2009 | 115 | $250,000.00 | A. Tellone | Gibraltar Partners |
| 12/10/2009 | 116 | $200,000.00 | A. Tellone | Gibraltar Partners |

## STEVEN KRASNER

### Chase Bank

| Date: | Check #: | Amount: | Payor: | Payee: |
|---|---|---|---|---|
| 07/08/2008 | 179 | $150,000.00 | Allison Krasner | Gibraltar Partners |
| 02/24/2009 | 240 | $ 50,000.00 | Allison Krasner | RAHFCO Select |
| 02/24/2009 | 241 | $ 25,000.00 | Allison Krasner | Gibraltar Partners |
| 03/10/2009 | 246 | $104,000.00 | Allison Krasner | Gibraltar Partners |

### Wachovia Bank

| Date: | Check #: | Amount: | Payor: | Payee: |
|---|---|---|---|---|
| 12/15/2008 | 1722 | $ 50,000.00 | Steven Krasner | Gibraltar Partners |
| 05/08/2009 | 1771 | $ 20,000.00 | Steven Krasner | Gibraltar Partners |

| 07/16/2009 | 1791 | $ 50,000.00 | Steven Krasner | Gibraltar Partners |
| 10/14/2009 | 1811 | $ 25,000.00 | Steven Krasner | Gibraltar Partners |
| 07/18/2010 | 1874 | $ 30,000.00 | Steven Krasner | Gibraltar Partners |

### DAVID FIEDERLEIN

### Chase Bank

| 06/14/2007 | 1639 | $150,000.00 | David Fiederlein | Gibraltar Partners |
| 03/20/2008 | 1007 | $ 85,000.00 | David Fiederlein | Gibraltar Partners |
| 11/03/2008 | 1013 | $100,000.00 | David Fiederlein | Gibraltar Partners |
| 02/26/2010 | 1024 | $ 60,000.00 | David Fiederlein | Gibraltar Partners |
| 06/10/2010 | 1032 | $ 28,000.00 | David Fiederlein | Gibraltar Partners |

### Merrill Lynch

| 10/04/2005 | 275 | $100,000.00 | David Fiederlein | Glenn Griffin |
| 06/14/2007 | 305 | $ 50,000.00 | David Fiederlein | Gibraltar Partners |
| 03/20/2008 | 319 | $100,000.00 | David Fiederlein | Gibraltar Partners |
| 11/03/2008 | 330 | $100,000.00 | David Fiederlein | Gibraltar Partners |
| 12/17/2008 | 104 | $250,000.00 | David Fiederlein | Gibraltar Partners |
| 06/01/2009 | 106 | $100,000.00 | David Fiederlein | Gibraltar Partners |
| 05/10/2010 | 107 | $510,000.00 | David Fiederlein | Gibraltar Partners |
| 06/10/2010 | 353 | $ 75,000.00 | David Fiederlein | Gibraltar Partners |
| 06/10/2010 | 108 | $182,000.00 | David Fiederlein | Gibraltar Partners |
| 07/30/2010 | 109 | $100,000.00 | David Fiederlein | Gibraltar Partners |

336.   PONZI SCHEME defendants, through the use of their agents, specifically

ANTHONY JOHNSON, RANDY HANSEN, ROBERT JOHNSON, CHRISTINE

JOHNSON, ALLISON JOHNSON, ROBERT JOHNSON, SR., ANNETTE JOHNSON, WARD ONSA, VINCENT PUMA and GLENN GRIFFIN, solicited investors to purchase interest in defendants' funds.

337.   ANTHONY JOHNSON and RANDAL K. HANSEN used the other defendants, specifically ROBERT JOHNSON, CHRISTINE JOHNSON and GLENN GRIFFIN as "finders" or "brokers" who were agents of the Ponzi scheme, who may have received commissions or other benefits for their role in promoting defendants' investment services, at the instruction of ANTHONY JOHNSON and other PONZI SCHEME defendants.

338.   In or about summer of 2004 or 2005, defendant ANTHONY JOHNSON told plaintiffs TELLONE at Hollow Brook Golf Club that GLENN GRIFFIN got 5% commission.

339.   As part of defendants' process of soliciting investors for the PONZI SCHEME defendants' investment services, defendants, including ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON and GLENN GRIFFIN, falsely told plaintiffs that the risk associated with PONZI SCHEME defendants' investments was extremely low, and the yields extremely high.

340.   During PONZI SCHEME defendants' solicitation of investors, claims were made that defendants' investments could be as profitable as to return up to three (3%) percent per month or over thirty-six (36%) percent per year.  Defendants further represented to investors that this rate of return was subject to an extremely low risk.

341.   The RAHFCO FUNDS LP investment prospectus provided by defendants did not disclose the fact that defendant ANTHONY JOHNSON and other defendants were in fact operating a Ponzi scheme.

342.   None of defendants involved in the recruiting of prospective investors provided current or prospective investors with material or accurate information regarding PONZI SCHEME defendants' finances, actual trading policies and practices, actual profits and losses resulting from the Ponzi scheme's operations.  Defendants ANTHONY JOHNSON, RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, and TARA HANSEN-LIENEN did not provide current or prospective investors with accurate or legitimate audited balance sheets for any of PONZI SCHEME defendants' trading services or any other accurate material financial disclosures.

343.   It is unclear what PONZI SCHEME defendants' "trades" and operations actually did with the investors' money; whether it was pooled together in various bank accounts or simply split up between and among defendants involved in the schemes is unclear.  Plaintiffs did not have any duties or management roles in the operation of the trading program, nor were plaintiffs aware of any information regarding what was actually going on at defendants' trading operations.

344.   The vast majority of funds, if not all funds, that came into PONZI SCHEME defendants' trading operations were from new investor money, not from any actual

profitable trades.  Though some disbursements were paid out to plaintiffs, money which was claimed to be the result of profitable trading, all or nearly all of said payments were Ponzi payments, that is, payments made from funds provided by other/new investors. To this date, the remaining investor funds were either lost in actual unprofitable trades of defendants' trading services and/or were converted by unspecified defendants and/or are presently unrecognizable at this time.  Defendants, ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, and PONZI SCHEME defendants, knowingly and/or recklessly contributed to misappropriating plaintiffs' funds for their own benefits.

## DEFENDANTS' MISREPRESENTATIONS AND ACTS OF FRAUD AND DECEIT

345.   Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove set forth with the same force and effect as if the same were fully set forth at length herein.

346.   As part of the Ponzi scheme, defendants knowingly and/or recklessly made numerous false and misleading statements about defendants' trading services and their trading program.  Additionally, defendants engaged in acts of fraud and deceit on prospective and existing investors.

- 65 -

347. No defendant ever disclosed to a plaintiff that all or nearly all of the "profit payments" were actually payments made from other investor funds, making defendants' trading services, in reality, only a Ponzi scheme.

348. Plaintiffs were never informed of defendants ANTHONY JOHNSON or ONSA'S civil actions by the SEC or CFTC investigations.

349. Defendants falsely claimed that:

 a. Defendants' trading program would generate profits from the trading or financial instruments.. (ANTHONY JOHNSON, GLENN GRIFFIN, RANDY HANSEN, VINCENT PUMA, RAHFCO, and GIBRALTAR)

 b. Defendants' trading program would result in minimum gross profit margins per month of three (3%) percent. (ANTHONY JOHNSON, and on behalf of and as the agent for all RAHFCO defendants, and GIBRALTAR)

 c. Defendants' trading program was extremely low risk. (ANTHONY JOHNSON, and on behalf of and as the agent for all RAHFCO defendants, GLENN GRIFFIN, and GIBRALTAR)

 d. Defendants' trading program misled current and prospective investors to think that defendants' trading program was subject to SIPC (Securities Investor Protection Corporation) protection. (ANTHONY JOHNSON, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES,

LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST
RETIREMENT SERVICES, and TARA HANSEN-LIENEN.)

e.  Defendants' management was orchestrated and supervised by top
level licensed professionals, with expertise in investing and trading
complex securities.  (ANTHONY JOHNSON, ROBERT JOHNSON,
CHRISTINE JOHNSON, RANDAL K. HANSEN, GLENN GRIFFIN,
VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON
PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING
PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE,
VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN
MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST
RETIREMENT SERVICES, and TARA HANSEN-LIENEN.)

350.  In fact, the above claims were false because:

f.  Defendants' trading program did not actually generate any significant
profits from the trading and financial operations.

g.  Defendants' trading program did not result in a gross profit margin of
about three (3%) percent per month, and did not generate any known
or recognizable profits at all.

h.  Defendants' trading program was in fact a Ponzi scheme.

i.  Defendants' trading program was not actually orchestrated and
supervised by top, expert managers controlling the investments.

j.  Defendants' trading services were not actually protected by SIPC.

k.  Individual defendants, including ANTHONY JOHNSON, RANDAL K.
HANSEN and the listed traders from RAHFCO FUNDS LP, specifically
KEVIN NUGENT and WARD ONSA, were not actually registered
broker dealers under §15(a)(1) of the Exchange Act.

l.  Investor money could not be returned due to insufficient funds and
fabricated financial investor reports.

351.  Defendants, specifically ANTHONY JOHNSON, RANDY HANSEN, and
TARA HANSEN-LEINEN never disclosed to investors or in the RAHFCO Prospectus
the fact that defendant ANTHONY JOHNSON had previously been the subject of an
SEC investigation involving a similar type of investment fraud.

352.  Defendant RANDY HANSEN knew or should have known defendant
ANTHONY JOHNSON was acting as an agent on behalf of RAHFCO in soliciting
money on behalf of RAHFCO.

353.  Defendants, ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE
JOHNSON, RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN
NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG
ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE,
VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA,
ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, and TARA HANSEN-
LEINEN, knew that their statements to current and prospective investors and plaintiffs
were materially false or misleading because they knew that:

a.  Investor payments were not from profitable trades but rather from new
investor funds;

b. Defendants' trading program did not exist as advertised or as described by defendants' agents in the recruitment of new investors;

c. The trading program did not generate the promised three (3%) percent returns per month, nor did it generate any significant profits to pay the claimed investor returns;

d. Plaintiffs' money was not safe, nor was it subject to the extremely low risk investments as advertised by defendants and their agents in recruiting investors.

354. Defendants, ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LEINEN, and PONZI SCHEME defendants, not only knew that their statements to current and prospective investors and plaintiffs were materially false and misleading, but PONZI SCHEME defendants frequently sent checks to current investors from the GIBRALTAR PARTNERS' account, which subsequently bounced due to insufficient funds; information which was not reflected on the statements mailed by PONZI SCHEME defendants. Such checks include, but are not limited to the following:

| Bank: | Date: | Check #: | Amount: | Payee: |
|-------|-------|----------|---------|--------|
| Chase | 05/30/2009 | 1120 | $ 40,000.00 | Steve Krasner |

| Chase | 06/14/2010 | 1287 | $100,000.00 | Steve Krasner |
| Wachovia | 11/25/2010 | 1031 | $ 61,500.00 | Steve Krasner |
| TD Bank | 02/11/2011 | 1048 | $ 10,000.00 | Steve Krasner |
| Citibank | 03/11/2011 | 1012 | $ 40,000.00 | Steve Krasner |
| Mahopac National | 03/25/2011 | 1014 | $400,000.00 | Steve Krasner |
| Wachovia | 12/15/2010 | 1071 | $123,000.00 | D. Fiederlein |
| Wachovia | 12/15/2010 | 1072 | $316,110.00 | D. Fiederlein |

355. Upon information and belief, defendants ANTHONY JOHNSON, WARD ONSA, VINCENT PUMA and RANDY HANSEN, created the GIBRALTAR companies, IIE companies/funds and CAPSTONE companies/funds in or about 2004 to be a strawman for ALL the RAHFCO COMPANIES/FUNDS and individual defendants so as to shield defendants from any liability toward the plaintiffs.

356. Upon information and belief, money and investments from plaintiffs given to GIBRALTAR and ARC VENTURES may have been transferred in some yet unknown manner to the defendants RAHFCO COMPANIES/FUNDS, RANDAL K. HANSEN, ANTHONY JOHNSON, his associates, ROBERT JOHNSON, and CHRISTINE JOHNSON.

357. Funds transferred by plaintiffs to defendant GIBRALTAR COMPANIES were partially invested by defendant ANTHONY JOHNSON, not invested at all, or transferred to the RAHFCO COMPANIES/FUNDS altogether.

358. Plaintiff FIEDERLEIN received letters and correspondence from RANDAL K. HANSEN regarding CAPSTONE, a fund the GIBRALTAR COMPANIES through

ANTHONY JOHNSON invested.  The correspondence from RANDAL K. HANSEN refers questions to ANTHONY JOHNSON.

359.   Defendants RANDAL K. HANSEN, ANTHONY JOHNSON, GIBRALTAR COMPANIES, RAHFCO COMPANIES and their agents worked together to defraud plaintiffs and used GIBRALTAR COMPANIES as a straw company.

## ANTHONY JOHNSON'S ACTIONS AS AN UNREGISTERED BROKER-DEALER

360.   Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove set forth with the same force and effect as if the same were fully set forth at length herein.

361.   §15(a)(1) of the Exchange Act prohibits a broker or dealer from using jurisdictional means such as the telephone or mails to effect transactions in securities unless the broker or dealer is registered with the SEC.  §3(a)(4)(A) of the Exchange Act defines a "broker" as any person who is engaged in the business of effecting transactions in securities for the accounts of others.  §3(a)(5)(A) of the Exchange Act defines a "dealer" as any person engaged in the business of buying and/or selling securities for the persons own account through a broker or otherwise.

362.   Defendants, specifically ANTHONY JOHNSON and RANDAL K. HANSEN, VINCENT PUMA, WARD ONSA and KEVIN NUGENT, participated in securities transactions as a broker-dealer with respect to the sale of interests in the operations of PONZI SCHEME defendants.  Defendants, including ANTHONY JOHNSON, RANDAL K. HANSEN and other PONZI SCHEME defendants, actively solicited investors to purchase securities via telephone, United States mail and through other undetermined methods.  Defendants used telephone, email, facsimile and U.S.

Mail to effect purchases and sales of the securities in their trading program.  Defendants herein mentioned and GLENN GRIFFIN, ROBERT JOHNSON and CHRISTINE JOHNSON solicited existing investors to make additional investments by sending them payments made from fictitious profits, which were really derived from new investments, the nature of a Ponzi scheme.  No defendant, specifically ANTHONY JOHNSON, RANDAL K. HANSEN or any traders associated with PONZI SCHEME defendants, were broker-dealers registered with the SEC during the time in which the PONZI SCHEME defendants were trading securities on behalf of their investors.

## DEFENDANT'S AS AGENTS OF RAHFCO

363.   Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove set forth with the same force and effect as if the same were fully set forth at length herein.

364.   That defendant ANTHONY JOHNSON held himself out as an agent of all RAHFCO defendants and defendant RANDY HANSEN.

365.   That defendant RANDY HANSEN knew or should have known defendant ANTHONY JOHNSON was acting on his behalf as an agent of his and all RAHFCO defendants in soliciting monies from plaintiffs.

366.   That defendant RANDY HANSEN and all RAHFCO defendants allowed defendant ANTHONY JOHNSON to hold himself out as an agent of defendants RANDY HANSEN and all RAHFCO defendants.

367.   That as a fifty (50%) percent owner of all RAHFCO defendants, defendant ANTHONY JOHNSON is an agent of all RAHFCO defendants.

368.   That defendant ANTHONY JOHNSON, as an agent of all RAHFCO defendants, and doing business on behalf of all RAHFCO defendants and defendant RANDY HANSEN, causes defendant RANDY HANSEN and RAHFCO to be liable for defendant ANTHONY JOHNSON's actions.

369.   That if defendants RANDY HANSEN and all RAHFCO defendants did not allow defendant ANTHONY JOHNSON to represent himself as their agent, defendants had an obligation to inform plaintiffs that defendant ANTHONY JOHNSON was not their agent.

370.   That defendant WARD ONSA was an agent and employee of all RAHFCO defendants and held himself out as such.

371.   That defendant RANDY HANSEN knew or should have known, defendant WARD ONSA was holding himself out as an agent and employee of all RAHFCO defendants.

372.   That defendant VINCENT PUMA was an agent and employee of all RAHFCO defendants and held himself out as such.

373.   That defendant RANDY HANSEN knew or should have known, defendant VINCENT PUMA held himself out as an agent and employee of all RAHFCO defendants.

374.   That defendant TARA HANSEN-LIENEN was an agent and employee of all RAHFCO defendants and held herself out as such.

375.   That defendant RANDY HANSEN knew or should have known, defendant TARA HANSEN-LIENEN held herself out as an agent and employee of all RAHFCO defendants.

376.   That defendant KEVIN NUGENT was an agent and employee of all RAHFCO defendants and held himself out as such.

377.   That defendant RANDY HANSEN knew or should have known, defendant KEVIN NUGENT held himself out as an agent and employee of all RAHFCO defendants.

## ANTHONY JOHNSON'S BROKER-DEALER
## BAR VIOLATIONS

378.   Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove set forth with the same force and effect as if the same were fully set forth at length herein.

379.   §15(b)(6)(B)(i) of the Exchange Act makes it unlawful for any person as to whom a broker-dealer bar is in effect to willfully "become associated with any broker or dealer in contravention of such order."   §3(a)(18) of the Exchange Act defines the terms "person associated with the dealer" to include "any person directly or indirectly controlling or controlled by, or under common control with such broker or dealer..."

380.   Despite ANTHONY JOHNSON'S bar as a broker-dealer pursuant to the above mentioned Exchange Act, ANTHONY JOHNSON acted as a broker by offering and selling securities, participating in securities transactions and engaging in the business of effecting transactions and securities for the accounts of others, thus in violation of his bar.

381.   Defendants WARD ONSA, RANDAL K. HANSEN, NUGENT and VINCENT PUMA all knowingly associated with ANTHONY JOHNSON in violation of his bar.

## DEFENDANTS' VIOLATIONS
## OF THE ADVISERS ACT

382.   Plaintiffs repeat, reiterate and reallege each and every allegation hereinabove set forth with the same force and effect as if the same were fully set forth at length herein.

383.   Defendants, specifically ANTHONY JOHNSON and RANDAL K. HANSEN, provided investment advice for compensation with respect to securities, and specifically recommended that investors purchase securities in defendants' trading program.  Thus, defendants acted as investment advisers as defined by §202(1)(11) of the Advisers Act.  As such, defendants are subject to the antifraud provision of the Advisers Act §206 which applies to "any investment adviser" whether registered with the SEC or not.

384.   §206(1) and (2) of the Advisers Act prohibits an investment adviser from employing any device, scheme or artifice to defraud clients, or from engaging in any transaction, practice or course of business that defrauds clients.

385.   §206(4) of the Advisers Act provides that it shall be unlawful to engage in any practice, act or course of business defined by the Commission to be fraudulent, deceptive or manipulative.  Under §206(4)-8 a person violates §206(4) if that person, makes any untrue statement of a material fact or to omit(s) or state(s) a material fact necessary to make the statement made, in light of the circumstances under which they were made, or otherwise engages in any act, practice or course of business that is fraudulent and deceptive or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

- 75 -

386.   By operating the Ponzi scheme described above while acting as an investment adviser, defendants, specifically defendants ANTHONY JOHNSON, RANDAL K. HANSEN, ONSA, NUGENT and PUMA, knowingly and/or recklessly violated the antifraud provisions of the Advisers Act specified above.

## COUNT ONE

### FRAUD-VIOLATIONS OF EXCHANGE ACTS
### §10b, RULE 10b-5, 15 U.S.C. §78j(b)

387.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

388.   Defendants, PONZI SCHEME defendants and defendants ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, and TARA HANSEN-LEINEN,  acting with knowledge by use of means or instrumentalities of interstate commerce or of the mails, or any facility or national securities exchange used or employed, in connection with the purchase or sale of security, a manipulative or deceptive device or in contravention of the rules or regulations of the SEC; employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices or courses of business which operated or

would operate as a fraud or deceit upon any person in violation of §10b of the Exchange Act and Rule 10b-5 there under.  Defendants violated, and unless restrained and enjoined, will, in the future violate Exchange Act §10b and Rule 10b-5.

389.   By reason of the above, plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

390.   The defendants' conscious, willful, wanton and malicious conduct entitles plaintiffs to an award of punitive damages in an amount to be determined at trial.

## COUNT TWO

### VIOLATION OF BROKER-DEALER VIOLATIONS OF §15(b)(6)(B)(i) OF THE EXCHANGE ACT [15 U.S.C. 78o(b)(6)(B)(i)]

391.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

392.   On or about October 12, 2006 ANTHONY JOHNSON consented to an Order barring him from association with a broker-dealer.  JOHNSON, without the consent of the SEC, willfully became or became associated with a broker or dealer in contravention of that Order, including RAHFCO, its agents and agents of JOHNSON.

393.   By engaging in the conduct described above, JOHNSON violated §78o(b)(6)(B)(i) of the Exchange Act by becoming or becoming associated with a broker or dealer.  By engaging in the conduct described above and associating with ANTHONY JOHNSON, defendants, RANDY HANSEN, ONSA, PUMA, NUGENT and PONZI SCHEME defendants violated 78o(b)(6)(B)(i) by becoming or becoming associated with a broker or dealer.

394.   By reason of the above, plaintiffs are entitled to an award of compensatory and punitive damages in an amount to be determined at trial.

## COUNT THREE

### CONTROL PERSON LIABILITY UNDER §20a OF THE EXCHANGE ACT (15 USC §78t(a))

395.   The plaintiffs incorporate by reference all the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

396.   At all times relevant to the allegations of this Complaint, RAHFCO, ANTHONY JOHNSON, RANDY K. HANSEN and TARA HANSEN-LIENEN controlled all defendants in this action.

397.   By reason of the foregoing, and pursuant to §20a of the Exchange Act (15 USC §78t(a)), RAHFCO, ANTHONY JOHNSON, RANDY K. HANSEN and TARA HANSEN-LEINEN are joint and severely liable with and to the same extent as the entities, agents, and aiders and abettors they controlled for violations of §10b of the Exchange Act and Rule 10b-5 (15 USC §78j(b)).

398.   At all times relevant to the allegations of this Complaint, RAHFCO, ANTHONY JOHNSON, RANDY K. HANSEN and TARA HANSEN-LEINEN controlled all defendants in this action.

399.   By reason of the foregoing, and pursuant to §20a of the Exchange Act (15 USC §78t(a)), RAHFCO, ANTHONY JOHNSON, RANDY K. HANSEN and TARA HANSEN-LEINEN are joint and severely liable with and to the same extent as the entities, agents, and aiders and abettors they controlled for violations of §15(b)(6)(B)(i) of the Exchange Act.

400.   At all times relevant to the allegations of this Complaint, RAHFCO, ANTHONY JOHNSON, RANDY K. HANSEN and TARA HANSEN-LEINEN controlled all defendants in this action.

## COUNT FOUR

## COMMON LAW CONVERSION

401.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

402.   RAHFCO, its agents and aiders and abettors had a possessory right and interest to its assets, including its customers' investment funds.

403.   Defendants, Ponzi scheme defendants and ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, converted the investment funds of RAHFCO customers when they received money originating from other RAHFCO customer accounts in the form of payments and other transfers.  These actions deprived RAHFCO and its customers of the use of this money.

404.   As a direct and proximate result of this conduct, RAHFCO and its customers have not had the use of the money converted by defendants.  By reason of

the above, plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

405.   Defendants' conscious, willful, wanton and malicious conduct entitles plaintiffs to an award of punitive damages in an amount to be determined at trial.

## COUNT FIVE

## COMMON LAW UNJUST ENRICHMENT

406.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

407.   Defendants benefited from the receipt of money from plaintiffs in the form of payments and other transfers which were the property of plaintiffs and its customers and for which defendants did not adequately compensate RAHFCO MANAGEMENT GROUP or provide value.

408.   This enrichment was at the expense of plaintiffs and ultimately at the expense of RAHFCO'S customers.

409.   Equity and good conscious require full restitution of the monies received by defendants from RAHFCO.  Defendants' conscious, intentional, willful and tortuous conduct entitles RAHFCO to recapture profits derived by defendants utilizing monies they received from RAHFCO including, by way of example and without limitation, profits earned from assets purchased with RAHFCO'S customer's funds.

410.   By reason of the above, plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

## COUNT SIX

## COMMON LAW CONSTRUCTIVE TRUST

411.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

412.   As set forth above, the assets of RAHFCO have been wrongfully diverted as a result of fraudulent conveyances, conversions and other wrongdoing of defendants for their own individual interests and enrichment.

413.   The plaintiffs have no adequate remedy at law.

414.   Because of the past unjust enrichment of defendants, plaintiffs are entitled to the imposition of a constructive trust with respect to any transfer of funds, assets or property from RAHFCO as well as any profits received by defendants in the past or on a going forward basis in connection with RAHFCO.

## COUNT SEVEN

## COMMON LAW ACCOUNTING

415.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

416.   As set forth above the assets of RAHFCO have been wrongfully diverted as a result of fraudulent conveyances, breach of fiduciary duties, conversions and other wrongdoing of defendants and their own, their families and individual interests and enrichment.

417.   Plaintiffs have no adequate remedy at law.

418.   To compensate plaintiffs for the amount of monies defendants diverted from RAHFCO for their own benefit, it is necessary for defendants to provide an accounting of any transfer of funds, assets or property received from RAHFCO as well as to any profits in the past and on a going forward basis in connection with RAHFCO.

- 81 -

Complete information regarding the amount of such transfers misused by defendants for their own benefit is within their possession, custody and control.

## COUNT EIGHT

## COMMON LAW BREACH OF FIDUCIARY DUTY

419.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

420.   This claim for breach of fiduciary duty is asserted against each of the defendants, Ponzi scheme defendants and ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, who had relationships of trust and confidence with RAHFCO, held senior managerial compliance supervisory responsibilities, were aiders and abettors and/or were agents of RAHFCO during the relevant time period and consequently had fiduciary duties to act in the best interests of and for the benefit of RAHFCO and Plaintiffs.

421.   The fiduciary duties owed by each defendant named herein included duties of care and loyalty to RAHFCO and plaintiffs and duties to act in good faith. They also had duties not to waste or divert assets of RAHFCO, duties not to exploit corporate

opportunities for their own benefit and duties not to act in furtherance of their own personal interests at the expense of RAHFCO and its customers.

422. Each defendant named herein acted in breach of the fiduciary duties owed to RAHFCO and its customers by and among other things, the misuse of corporate assets, self-dealing, mismanagement, corporate waste, failure to prepare, implement and carry out compliance and supervisory responsibilities and policies and breaches of the defendants duties to act with care, loyalty and good faith and fair dealing as described above.

423. As a direct and proximate result of the conduct by the defendants, RAHFCO and plaintiffs were damaged.

## COUNT NINE

## COMMON LAW NEGLIGENCE

424. The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

425. Each defendant, Ponzi scheme defendants and ANTHONY JOHNSON, ROBERT JOHNSON, CHRISTINE JOHNSON, ALISON JOHNSON, ROBERT JOHNSON, SR., RANDAL K. HANSEN, GLENN GRIFFIN, VINCENT PUMA, KEVIN NUGENT, WARD ONSA, HUDSON PARTNERS NYC, LLC, SPICER JEFFRIES, SFG ACCOUNTING PLLC, MAN FINANCIAL INC. (a/k/a MF GLOBAL), PERMAPAVE, VERIGREEN, STELLAR CORPORATION SERVICES, LLC, SUSAN MEIDINGER CPA, ENTRUST GROUP d/b/a ENTRUST RETIREMENT SERVICES, TARA HANSEN-LIENEN, and SHIRLEY HANSEN, had a duty to protect RAHFCO and its customers from unreasonable risks and actions, including without limitation, the loss of its

customers' assets due to fraud, the self-dealing of management and other senior executives and its agents, conversion of funds for personal use, the failure to prepare, implement and carry out compliance and supervisory responsibilities and policies and other tortuous conduct by or unjust enrichment of the defendants ANTHONY JOHNSON, RANDY K. HANSEN and ALL other defendants named herein.

426.   Each defendant named herein breached these duties by failing to conform to the appropriate standards of care commensurate with their positions at RAHFCO, their relationships of trust with RAHFCO, plaintiffs and their duties to RAHFCO customers.

427.   As a direct and proximate cause of the actions of defendants, RAHFCO and plaintiffs have been damaged by defendants' negligence and failure to adhere to standards of appropriate care.

428.   By reasons of the above, plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

429.   Defendants' conscious, willful, wanton and malicious conduct entitles the plaintiffs to an award of punitive damages in an amount to be determined at trial.

## COUNT TEN

## COMMON LAW AGENCY LIABILITY

430.   The plaintiffs incorporate by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

431.   Defendants ANTHONY JOHNSON, WARD ONSA, VINCENT PUMA, KEVIN NUGENT, TARA HANSEN-LIENEN, ROBERT JOHNSON, CHRISTINE

JOHNSON, GLENN GRIFFIN all held themselves out as agents of all RAHFCO defendants, to plaintiffs and other investors.

432.   Defendants RANDY HANSEN and all RAHFCO defendants knew or should have known that same defendants were acting as agents and/or employees of RANDY HANSEN and all RAHFCO defendants.

433.   That as a result of defendants RANDY HANSEN and all RAHFCO defendants allowing above named defendants to act as RANDY HANSEN and all RAHFCO defendants' agent, RANDY HANSEN and all RAHFCO defendants' are vicariously liable.

434.   That plaintiffs relied on and believed the individually named defendants' representations; and were agents and acting on behalf of RANDY HANSEN and all RAHFCO defendants.

435.   By reasons of the above, plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

436.   Defendants' conscious, willful, wanton and malicious conduct entitles the plaintiffs to an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, plaintiffs respectfully request this Court enter judgment in favor of the plaintiffs and against defendants as follows:

On the First Count for relief pursuant to §10b of the Exchange Act and Rule 10b-5 plaintiffs seek One Hundred Million ($100,000,000.00) Dollars;

On the Second Count for relief pursuant to §15(b)(6)(B)(i) of the Exchange Act, plaintiffs seek One Hundred Million ($100,000,000.00) Dollars;

On the Third Count for relief pursuant to §20a of the Exchange Act, plaintiffs seek One Hundred Million ($100,000,000.00) Dollars;

On the Fourth Count for relief against defendants for the wanton, willful and malicious conversion of RAHFCO and plaintiffs' assets, for compensatory and punitive damages in amounts to be determined at trial;

On the Fifth Count against defendants for unjust enrichment for compensatory damages in an amount to be determined at trial;

On the Sixth Count against defendants for the imposition of constructive trust upon any transfer of funds, assets or property received from RAHFCO or PONZI SCHEME defendants as well as any profits in the past and on a going forward basis received by any defendant in connection with RAHFCO or PONZI SCHEME defendants, in favor of plaintiffs;

On the Seventh Count against defendants for an accounting of any transfer of funds, assets or property received from PONZI SCHEME defendants as well as any profits in the past and on a going forward basis received by any defendants in connection with RAHFCO and PONZI SCHEME defendants;

On the Eighth Count for relief against defendants for breach of fiduciary duty, for compensatory damages in an amount to be determined at trial;

On the Ninth Count for relief as against defendants, for compensatory and punitive damages in an amount to be determined at trial;

On the Tenth Count for relief as against defendants, for compensatory and punitive damages in an amount to be determined at trial;

Awarding plaintiffs all applicable attorneys' fees, interest, costs and distributions of this action;

Granting plaintiffs such other, further and different relief as the Court deems just, proper and equitable.

Dated:  Melville, New York
         August 31, 2011

Michael B. Schulman & Associates, P.C.
By:  Michael B. Schulman (MS3690)
Attorneys for Plaintiffs
145 Pinelawn Road, Suite 310N
Melville, New York 11747
(631) 622-2080